### 12358

PALMETTO GOLF CLUB *ET AL.* v. ROBINSON, SHERIFF, *ET AL.*

REAL ESTATE & FIDELITY CO. *ET AL.* v. SAME

(141 S. E., 610)

1. Sunday—Statute Does Not Prohibit Sunday Golf Playing as Exercise or Pastime (Cr. Code 1922, § 715).—Cr. Code 1922, § 715, does not prohibit playing of golf on Sunday as a game, exercise, sport or pastime.

2. Sunday—One Over 15, Playing Golf as Professional or Instructor as Worldly Labor, Working as Caddie for Compensation, or Owning, Leasing, or Maintaining Golf Course, on Sunday, Violates Statute (Cr. Code 1922, § 713).—One over 15 years of age, who engages in game of golf as professional or instructor as his wordly labor, or in work of caddie for compensation, or owns, keeps, or maintains any golf links or course as his business, on Sunday, violates Cr. Code 1922, § 713.

3. Corporations—Statutes Prohibiting Public Sports and Worldly Labor on Sunday Do Not Apply to Corporations, but Apply to Officers, Agents, and Employees Thereof (Cr. Code 1922, §§ 713,

Note: As to what amusements are prohibited by Sunday Laws, see annotation in 17 L. R. A. (N. S.), 1157; 21 L. R. A. (N. S.), 23; 4 A. L. R., 382; 25 R. C. L., 1427; 3 R. C. L. Supp., 1456; 4 R. C. L. Supp., 1632.

715).—Cr. Code 1922, §§ 713, 715, prohibiting public sports and worldly labor on Sunday, do not apply to corporations, but apply to officers, agents, servants, and employees thereof.

4. Injunction—Equity Court Will Restrain Criminal Prosecution Only When Equity Suit to Try Same Right Between Same Parties is Pending, Unless Prosecution is Instituted Under Clearly Void Ordinance or Statute.—Court of Equity will restrain a criminal prosecution only where there is a suit pending in equity to try same right in issue in criminal proceeding and such prosecution is instituted by one party to such suit against the other, unless it is instituted under clearly void ordinance or statute and irreparable injury to property rights may result from its enforcement.

5. Injunction—Prosecutions for Playing Golf on Sunday Cannot be Enjoined, in Absence of Pending Equity Suit to Try Any Issue Between Parties at Time of Threats to Institute Prosecutions (Cr. Code 1922, §§ 713, 715).—There being no suit pending in Court of Equity to try any issue between parties to suits to enjoin prosecutions for playing golf on Sunday in violation of Cr. Code 1922, §§ 713, 715, at time of threats by defendants to institute such prosecutions against plaintiffs, injunction cannot be sustained.

6. Sunday—Statutes Prohibiting Public Sports and Worldly Labor on Sunday are Not Unconstitutional (Cr. Code 1922, §§ 713, 715).—Cr. Code 1922, §§ 713, 715, prohibiting public sports and worldly labor on Sunday, does not violate either State or Federal Constitutions.

7. Injunction—Statutes Prohibiting Public Sports and Worldly Labor on Sunday Being Constitutional, Their Enforcement Will Not be Enjoined Under Exception to Rule Against Restraining Criminal Prosecution in Absence of Pending Equity Suit to Try Same Right (Cr. Code 1922, §§ 713, 715).—Cr. Code 1922, §§ 713, 715, prohibiting public sports and worldly labor on Sunday, being constitutional, their enforcement cannot be enjoined under exception to rule that equity will not restrain criminal prosecution, in absence of pending equity suit between same parties to try same right in issue.

8. Constitutional Law—Courts Must Construe Laws as Written, Without Regard to Propriety or Inconsistencies Apparent or Arising from Enforcement.—Court has nothing to do with propriety of statutes or inconsistencies appearing therein or arising from rigid enforcement thereof, but is confined to construction thereof as written.

Before RICE, J., Aiken, March, 1926. Affirmed.

Actions by the Palmetto Golf Club and another and by the Real Estate & Fidelity Company and another against Nollie Robinson, as Sheriff of Aiken County, and another. Restraining orders granted, and defendants appeal. Orders dissolved.

Orders of Judge Rice directed to be reported by Justice Cothran are as follows:

## "ORDER OF INJUNCTION

"Duly verified complaints in each of these cases, with proper supporting affidavits, were presented to me on March 5th. After careful examination of these documents, I granted a rule to show cause returnable before me today, and in the meantime without the necessity under the law of notice to the defendants, such defendants were restrained from arresting those who attempted to play golf on Sunday upon the two courses referred to in the complaints. This course of action is expressly provided for and authorized by Section 487 of the Code Civ. Proc. 1922, and was in accordance with the usual practice in such cases.

"Upon the return of the rule today, in which the Attorney General, and Mr. D. W. Robinson, of the Columbia bar, appeared for the defendants, and Messrs. Henderson & Salley and Williams, Croft & Busbee for the plaintiffs, a demurrer was interposed by the defendants to the complaint by way of return. Full argument was had and the interesting questions involved have had my careful consideration.

"I have concluded that the demurrer should be overruled and that a temporary injunction *pendente lite* should be granted, and it is so ordered.

"At a later date I shall set out in a supplemental order the authorities upon which I rely; but, as an early decision should be announced herein, I shall content myself at this time by stating that I am satisfied that Section 715 of the Criminal Code 1922 manifestly does not prohibit the play-

ing of golf on Sunday, if it is done in a quiet and decorous manner, as the complaints herein allege it is always done. The decisions of many Courts which I shall hereafter set out, are to the effect that, when the Statute prohibits 'public sports and pastimes,' only those which the public pays an admission price to view are prohibited, and that, when the Statute prohibits 'other games, exercises, sports or pastimes, *such as hunting, shooting, chasing game, or fishing,*' no sport is prohibited unless it is similar to those named. This construction is greatly re-enforced by the fact that prior to 1896 the Statute prohibited all 'other games, exercises, sports or pastimes *whatsoever*', and that the act of the Legislature of 1896 struck out the general word, 'whatsoever,' and inserted in lieu thereof the expression 'such as hunting, shooting, chasing game, or fishing.'

"Penal Statutes should always be strictly construed and should never by a forced construction be stretched to cover acts which they do not clearly prohibit. The Statute in question, according to the complaint, was originally adopted before golf was in vogue in South Carolina, and it cannot be said that the Legislature then had golf in view, which fact is intensified by the fact that in 1896, and after golf was being played in South Carolina, the Statute was amended to prohibit shooting, fishing, etc., and not to prohibit the playing of golf on Sunday.

"I am further satisfied that, while ordinarily a threatened arrest will not be enjoined by a Court of equity, the Supreme Court of South Carolina has recognized as a well-known exception to the rule, the doctrine that, where property rights are involved as herein, an injunction will be granted to restrain a threatened arrest made under a Statute which is either void or unconstitutional. The recognition of the doctrine referred to is based upon a direct decision of the Supreme Court of the United States, which Court has quite recently extended this doctrine to cases in which

the alleged offense is manifestly not covered by the Statute invoked, which, in my opinion, is a correct statement of the true rule. In these cases I am satisfied both that the alleged offense, viz., the playing of golf on Sunday, is manifestly not covered by the Statute, and, further, that the complaint raises a grave constitutional objection to the Statute, should it be construed to apply to golf; that is to say, whether, as a matter of law and governmental right, the regulating of the playing of golf, which is alleged to be an innocent, quiet, and restful game, which involves no labor on the part of the player, comes within the police power of the State in a case in which property rights are involved. The Supreme Court of Illinois, at least, has rendered a decision which seems to sustain plaintiff's position. The Supreme Court of South Carolina has sustained the constitutionality of the Sabbath observance Statute only as applied to working and laboring upon Sunday, but has not considered the constitutionality of that portion of the Statute which applies merely to recreations, which question presents a very different phase of the law.

"Further elements involved are the inadequacy of the remedy at law to the plaintiffs, and the well-known principle of equity that a multiplicity of actions or prosecutions may be prevented by injunction. In this connection especially I may add that I consider that the granting of this temporary injunction rather than continued arrests and acquitals, or even convictions, will furnish the most expeditious means possible of taking the question of the proper construction of the Statute to the Supreme Court of South Carolina, which, after all, is the end that all parties should desire.

"This Court unhesitatingly recognizes the good faith of the Chief Executive of this State in his attempt to enforce the laws relating to Sabbath observance, but, when any officer undertakes to restrain the liberty of a citizen, or to

prevent such citizen from doing an act harmless in itself, as to both such citizen and any others, he must be able to place his finger on a law which actually covers the alleged offense. If such a law does not exist, then it is the duty of the Court, when appealed to, in a proper case, to do as it always has done; namely, to prevent the threatened arrest for which it considers there is no actual legal warrant.

"Wherefore it is ordered that, until a final determination of these actions is reached by the Courts, the defendants, their deputies and agents and all peace officers and all individuals are hereby restrained and enjoined from arresting, molesting, or interfering with the plaintiffs or any and all persons who play golf on Sundays upon the golf courses described in the complaints and known as the Highland Park Golf Course, and the Palmetto Golf Course, both in Aiken County.

"Let the plaintiffs enter into the usual injunction bond in the sum of $300."

## "SUPPLEMENTAL ORDER

"In my order in the two above-entitled causes, dated March 19, 1927, containing the injunction herein *pendente lite,* I stated that at a later date I would set out in a supplemental order the authorities upon which I relied for granting the injunction, and I now desire to set out more fully the authorities and the reasons on which I based my action continuing the injunction until the final hearing of the case.

"The question before me on March 5th, and at the present time, is not the determination of the merits involved in the case, but is solely the question of whether a temporary injunction should issue until the Courts can determine in an orderly manner and as speedily as is possible and without the necessity of many arrests and trials, whether the

playing of the game of golf on Sunday in South Carolina is prohibited by law.

"The Supreme Court of South Carolina has repeatedly held that a temporary injunction should be granted if the complaint fairly makes out a *prima facie* case.

"It seems to me that there are two questions presented for my determination: (1) Is the playing of golf on Sunday under the circumstances set out in the complaint prohibited by law? and (2) If it is not so prohibited by law in South Carolina, then are the plaintiffs entitled to the relief of a temporary injunction until the Supreme Court can pass upon the question involved or must they either cease to play golf on Sunday or submit to repeated arrests and prosecutions?

"Upon the first and vitally important question, I am convinced that the playing of golf on Sunday is clearly not prohibited by Section 715 of the Criminal Code, for the following reasons:

"(a) In its first clause the Statute refers to 'public' sports or pastimes. The word 'public,' in so far as it goes through the Statute, has been construed to mean sports and pastimes to which the public is admitted by paying a fee. *Cheeves v. State,* 5 Okl. Cr., 361; 114 P., 1125. Under the allegations of the complaints, golf as played in Aiken is on a private course to which the public is not admitted, and no fee is charged to witness the game.

"(b) In its second clause the Statute as it now stands, refers to 'other games, exercise, sports or pastimes, such as hunting, shooting, chasing game or fishing.' The history of the Statute sheds great light upon its interpretation. The Statute was adopted many years ago. Prior to 1896 (see Section 387, Revised Statutes of 1893) the Statute prohibited all 'other games, exercises, sports or pastimes *whatsoever.*' The Legislature in 1896 (22 Statute, 221) struck out the exceedingly general word *'whatsoever,'* and limited

the inhibition to 'other games, exercises, sports or pastimes, such as hunting, shooting, chasing game, or fishing.' The legal effect of the amendment is clearly either to limit the games, exercises, sports, and pastimes prohibited to such sports as hunting, shooting, and fishing, or is a legislative confession that the law as it existed was too general to cover sports not specifically mentioned.

"It is alleged in the complaint, and the defendants do not contradict the allegation, and I hold, that golf is not in any manner similar to hunting, shooting, chasing game, or fishing, or to bull baiting, bear baiting, football, or horse racing.

"The question of the proper interpretation of the ancient Sabbath Statute has been before the Courts frequently and in many States, and there is no dissent from the holding that, when one of these penal Statutes prohibits various games or recreation and other such games, the prohibition does not extend to a sport or pastime which is of a different character. *State v. Prather*, 79 Kan., 513; 100 P., 57; 21 L. R. A. (N. S.), 23; 131 Am. St. Rep., 339; *Ex parte Neel*, 157 Mo., 527; 57 S. W., 1025; 80 Am. St. Rep. 638. *People v. Hemleb*, 127 App. Div., 356; 111 N. Y. S., 690. *State v. Nashville Baseball Association*, 141 Tenn., 456; 211 S. W., 357; 4 A. L. R., 368. *Territory v. Davenport*, 17 N. M., 214; 124 P., 795; 41 L. R. A. (N. S.), 407. *State v. Chamberlain*, 112 Minn., 52; 127 N. W., 444; 30 L. R. A. (N. S.), 335; 21 Ann. Cas., 679; *Ex parte Roquemore*, 60 Tex. Cr. R., 282; 131 S. W., 1101; 32 L. R. A. (N. S.), 1186.

"The 25 R. C. L., 1427, succinctly states the matter: 'A Statute prohibiting certain specified public amusements and other like and similar amusements on Sunday does not apply to any not named unless they are *ejusdem generis.*'

"In the *Prather case, supra,* in which the Supreme Court of Kansas was considering a Statute (Gen. St. Kan., 1901,

§ 2258) prohibiting 'horse racing, cockfighting or playing at cards or game, of any kind, on the first day of the week,' the Court in holding that the expression 'game of any kind' was limited to such games as horse racing, cockfighting or cards, and did not apply to the playing of baseball on Sunday, specifically held that the Statute could not by any possible construction apply to 'croquet, basketball, tennis, and *golf.'*

"(c) In interpreting the ancient Sunday Statutes as applied especially to such a comparatively modern sport as baseball, several Courts have held that such Statutes could not be held to prohibit baseball (unless the general word necessarily covered it), as baseball was not known when the Statutes were enacted. *Ex parte Neet, supra; State v. Nashville Baseball Association, supra; In re* Hull, 18 Idaho, 475, 110 P., 256, 30 L. R. A. (N. S.), 465. It is alleged in the complaint that golf was not known in America when this Statute was originally adopted in South Carolina. The central thought of these decisions is that, in order to punish criminally an act, the Legislature should clearly prohibit the act. The thought is intensified in South Carolina by the facts, as hereinbefore set out, that in as recent a time as 1896 the Legislature of South Carolina did pass an amendatory act specifically prohibiting hunting, shooting, and fishing on Sunday and not prohibiting golf on Sunday.

"Hence, both historically and by a direct interpretation of the Statute as it now stands, I hold that golf manifestly is not prohibited by the Statute.

"ARE THE PLAINTIFFS ENTITLED TO A TEMPORARY
INJUNCTION?

"The undoubted rule that ordinarily a court of equity will not enjoin a criminal prosecution is subject to the well-known exception that, where property rights are involved and the impairment of the enjoyment of vested rights and

property is threatened, a criminal prosecution under a Statute or ordinance which is clearly void or unconstitutional will be enjoined, where irreparable injury to property rights may result from its enforcement, although the arrest of but one person may be contemplated. This principle is clearly recognized by the Supreme Court of the United States in *Dobbins v. Los Angeles,* 195 U. S., 223; 25 S. Ct., 22; 49 L. Ed., 169.

"In *Riley v. Town of Greenwood,* 72 S. C., 92; 51 S. E., 532; 110 Am. St. Rep., 592, the Supreme Court of South Carolina held that an injunction was proper against the enforcement of an ordinance which upon its face was not void, and the fact that it was void could be determined only by reference to the facts of the particular case involved.

"In passing it is proper to note that the Supreme Court of South Carolina has not yet passed upon the constitutionality of the Sunday Statute in South Carolina involving *sports* and *pastimes,* but that all of the decisions upon said subject are directed alone to the Statute prohibiting *labor* and the *sale* of commodities on Sunday. *Cain v. Daly, supra; State v. James,* 81 S. C., 197; 62 S. E., 214; 18 L. R. A. (N. S.), 617; 128 Am. St. Rep., 902; 16 Ann. Cas., 277. *State v. Hondros,* 100 S. C., 242; 84 S. E., 781; and *City Council v. Benjamin,* 2 Strob., 509; 49 Am. Dec., 608.

"As has been pointed out, the decision of the Supreme Court of South Carolina in *Cain v. Daly, supra,* rendered in 1906, to the general effect that an injunction would be granted to prevent a criminal prosecution if the Statute invoked were either void or unconstitutional, was based on the Dobbins decision of the Supreme Court of the United States. Since the Dobbins decision, the Supreme Court of the United States has in the case of *Philadelphia Co. v. Stimson,* 223 U. S., 616; 32 S. Ct., 340; 56 L. Ed., 570, extended the doctrine to cases 'when an officer, insisting

that he has the warrant of a Statute, *is transcending its bounds, and thus unlawfully assuming to exercise the power of government against the individual.'*  The Supreme Court of the United State held therein, in the case in question in which property rights were involved, that an injunction against a threatened criminal prosecution is proper if it appears to the Court the officer who was threatening such criminal prosecution in attempting to prosecute the individual is *transcending the bounds of the Statute.*

"To translate the doctrine thus enunciated into terms of this case, and to state my own idea of the true rule, I feel that, if the playing of golf on Sunday under the circumstances outlined in the complaint, in a private park, and unaccompanied by boisterous or objectionable conduct, *is manifestly not prohibited by the Statute* in the opinion of the Court passing upon the application for a temporary injunction, such temporary injunction should be granted in a case in which property rights are involved.  This doctrine is supported directly by the Supreme Court of Oregon.  (*In re Hall v. Dunn,* 52 Or., 475; 97 P., 811; 25 L. R. A. [N. S.], 193), and is supported by editorial note found in 35 Am. St. Rep., pp. 678, 679.  Other cases to the same general effect are *New Orleans Baseball Co. v. New Orleans,* 118 La., 228; 42 So., 784; L. R. A. (N. S.), 1014; 118 Am. St. Rep., 366; 10 Ann. Cas., 757.  *Fellows v. Charleston,* 62 W. Va., 665; 59 S. E., 623; 13 L. R. A. (N. S.), 737; 125 Am. St. Rep., 990; 13 Ann. Cas., 1185. *Cutsinger v. Atlanta,* 142 Ga., 555; 83 S. E., 263; L. R. A., 1915-B, 1097, Ann. Cas., 1916-C, 280.  *Austin v. Austin Cemetery Association,* 87 Tex., 330; 28 S. W., 528; 47 Am. St. Rep., 114; and the text to 14 R. C. L., 428–430.

"It is further alleged in the complaint that there is no adequate remedy at law, and that a multiplicity of prosecutions would result, and are threatened, should the remedy of an injunction be withheld.  These are well-recognized

reasons for the granting of an injunction; while standing alone they might not be sufficient in a case like this, but the general propriety of prohibiting a multiplicity of prosecutions in a case in which property rights are involved, and in a case in which the right to maintain the prosecution is exceedingly uncertain, to say the most, is recognized by the Supreme Court of the United States *in re* Young, 209 U. S., 123; 28 S. Ct., 441; 52 L. Ed., 714; 13 L. R. A. (N. S.), 932; 14 Ann. Cas., 764, and both of these questions are supported by the editorial note found in 118 Am. St. Rep., 375, in which the cases are collated. See also *Board of Commissioners. v. Orr,* 4 A. L. R. (N. S.), 575.

"In *Truax v. Raich,* 239 U. S., 33; 36 S. Ct., 7; 60 L Ed., 131; L. R. A., 1916–D, 545; Ann. Cas., 1917–B, 283, the Supreme Court of the United States held that there were sufficient property rights involved, and that the element of irreparable injury was sufficiently present to justify an injunction against a criminal prosecution, where only the loss of a job as a cook was threatened. In the present cases interruption of important business and diminution of the value of exceedingly expensive property is alleged.

"In addition to these considerations, in the present case, what may be a serious constitutional question is raised. The Supreme Court of South Carolina in *Cain v. Daly,* 74 S. C., 480; 55 S. E., 110, at least intimated that, if a constitutional question of some import was raised, an injunction against a criminal prosecution would be proper. In this case it is contended in the complaint that the plaintiff corporations have invested much money in the tourist business; that their clientele consists of tourists who are in the habit of playing golf on Sunday in their homes; that there is keen competition between the resorts of North Carolina, Georgia, and Florida, and Aiken, as a resort; and that the plaintiffs will lose much custom and patronage

which will decrease the value of their property and will amount to a taking of their property if the playing of golf on Sunday is prevented. They claim that golf on Sunday is an innocent amusement, is beneficial to the human body, is restful, and involves no labor on the part of the player, and that, if the Statute existing in South Carolina is to be construed as prohibiting golf on Sunday, it is an improper exercise of police power, in that the police power of the State may be invoked only to prohibiting something which may be *injurious* or may improperly affect the *morals* of the citizens of the State.

"Many authorities are collated in 25 R. C. L., p. 1415, as holding Sunday Statutes to be constitutional. After examining most of these authorities, however, we find they pass upon that portion of the Sunday Statutes which prohibit *laboring* upon Sunday, and do not seem to pass upon the question now raised. To the contrary, in the *Dobbins case, supra,* the Supreme Court of the United States says that it is not within the police power to restrain the carrying on of business 'which in itself is recognized as innocent and useful to the community.' It would seem at least that an important constitutional question is involved herein.

"In addition to what has already been said, it is a familiar rule in the construction of criminal Statutes that they must be construed *strictly*. They are not to make an act harmless in itself a crime, unless it be specifically named in the Statute, or else is embraced in its terms by *necessary* implication. If there is doubt as to whether a particular act is covered by the Statute, then the Courts will not hold it to be a crime.

"Another reason why the Statute in question should receive, perhaps, a stricter construction than usual, is that, in so far as sports, games, *pastimes,* and *recreations* are concerned, it comes dangerouly near if it does not in fact infringe the right of conscience guaranteed by both the fed-

13—S. C. R.

eral and State Constitutions. In every civilized country the individual citizen has to surrender more or less of his natural rights for the benefit of the body politic; but it has never been held by any Court, so far as I can ascertain, that in this republic, any citizen is required to give up one jot or tittle of his rights of conscience for the benefit of any person or body of persons; and he is free to exercise such right unless under the guise of conscience he commits acts 'which violate the good order of society.'

"I trust it may not be amiss for the writer of this opinion to state, that he has never played golf or any other game on Sunday, so far as he can recall, and probably never will. Call it 'prejudice' against the idea, or 'conscience,' or what you may, due no doubt to his early training, but many others probably just as conscientious as the writer do play golf and other games on Sunday, and this Court will certainly not undertake to sit in judgment on the moral aspect of the question, when such games are not only harmless in themselves, but are considered very beneficial to the physical man.

"So far as golf is concerned, the writer does not play it, but he has lived in Aiken 23 years, and has often seen players at the game. From the personal observation, therefore, this Court knows it to be one of the quietest games imaginable. In fact, it is the very reverse of anything boisterous or noisy or calculated to disturb in any degree the peace and quiet of the Sabbath day. Indeed, if this Court were called upon to define the difference from a moral standpoint of playing golf on Sunday and taking a pleasure ride on the same day, it would find itself faced with a very difficult question. Honesty and candor require us to state that few of us who can afford it fail to take pleasure rides sometimes on Sunday.

"If it should be thought that this Court is injecting into this order a matter considered by some to have been settled

by our Supreme Court about 1846, in *City Council v. Benjamin,* 2 Strob. Law, 521; 49 Am.. Dec., 608, I will say that in that case the question before the Court was as to *sales and labor* on Sunday, and not games, pastimes, and sports, on that day. Again, if there be any serious doubt as to whether or not a law infringes on the right of conscience, it should not be considered settled until passed upon by our Court of last resort.

"The writer of this order may be unduly interested in this phase of the question, but he has for 43 years been a member of the Baptist Church, which, as far back as its history can be traced, has always strenuously upheld the right of conscience, and the free and untrammeled exercise thereof, where such exercise of conscience was not against the peace, good order, and safety of society. In fact, it is claimed that this denomination, more than any other, was instrumental in having the Constitution of the United States amended, barring Congress from enacting any laws *respecting* an establishment of religion or *prohibiting* the free exercise thereof, and it is interesting to note that the same provision and in the identical words is written in our State Constitution of 1895.

"So far as my limited research has gone, Congress has persistently refused to legislate on the subject, except indirectly in a few minor, unimportant cases.

"As early as 1830, a strong memorial was presented to the national lawmaking body praying that a law be passed stopping the carrying of mails on Sunday, or the opening of post offices on that day. The committee to whom the memorial was referred made an adverse report, and in part said: 'The framers of the Constitution recognized the eternal principle that man's relation to his God is above human legislation, and his rights of conscience inalienable. Reasoning was not necessary to establish this truth; we are

conscious of it in our own bosoms.   * * *   It is an in-born principle which nothing can eradicate.'

"At the last session of the Legislature of Virginia, a bill to require the Bible to be read in the public schools was creating a great deal of interest.  The Baptists, constituting ,the largest denomination of that ,State, memorialized the Legislature against the bill, and it was defeated.  While making it plain that they earnestly advocated the reading of the Bible by every one, they said in part:  'It is not a question of majorities, for, if the conscience of the majority is to be the standard, there is no such thing as the right of conscience at all.  It is against the power of majorities that the right of conscience is protected.  This right is an indefeasible right of man of which no government can deprive him.  There are some rights which even the majority cannot take away, and the right of conscience is the most sacred of these.  Government should never interfere, unless man, under the guise of conscience, commits acts which violate the good order of society, and, again, if there is one teaching which history makes clear, it is that Christianity prospers most under those governments which, as such, seek to help it least.  Again, a false religion may need the peculiar recognition of the law, but it is beneath the dignity of the true religion to ask or accept it.  We are unwilling to admit, but on the other hand emphatically deny, that the text-book of our religion needs the strong arm of law to support it.'  From *City Council v. Benjamin,* I take this excerpt:  'It is impossible for human laws to regulate religion without destroying it.'

"Let no man in reading this order get the idea that the writer favors a 'wide open' or 'continental' Sunday.  He hopes never to live to see this in South Carolina.  But he strongly feels that in the construction of Statutes such as the one in question, the Courts should be careful not to

force any one to keep religious observances against his conscience.

"So deeply is religion woven into the very fabric of our lives, that it is difficult indeed to legislate on the subject, or for even a judge to pass upon a question involving religion or the exercise thereof, without unconsciously being influenced by peculiar religious convictions.

"It seems to this Court that in construing Statutes such as the one in question, where it can be done without violating the written law, it should be held that such Statutes are intended to prevent any serious interruption of the repose and religious liberty of any community in this State. It should not be the intention to interfere with the freedom of the public in the pursuit of relaxation and amusement on the Sabbath day when it does not seriously interfere with the rights of other members of the community who desire a quiet and uninterrupted observance of the day. The idea above set out is taken from *State v. Chamberlain,* *supra,* and seems so just that it is hereby adopted. For the last 30 or 40 years, the people of this state have followed the above policy in the enforcement of our 'Sunday' laws.

"My excuse for setting out in this order some of the 'peculiar' views of the Baptist Church is that such views are so expressive of the *spirit* of our Constitution on the subject of liberty of conscience.

"Again, there is a small minority among us who keep the *seventh day* of the week as the *Sabbath,* and who shall say, there is no authority for their doing so.

" 'Six days shalt thou labor and do all thy work; but the *seventh* day is the Sabbath of the Lord thy God; in it thou shall not do any work.   * * *'   Deut. 5 :13 and 14.

"Seventh Day Baptists, Seventh Day Adventists, Jews, and possibly others are included among those who believe it their religious duty to follow the above command. The great majority of our citizens have adopted the first day

of the week (the Day of the Resurrection), as our HOLY day or Sabbath, but as above so clearly stated in the 'memorial' referred to, 'it is not a question of *majorities,* for if the conscience of the majority is to be the standard, there is no such thing as the right of conscience at all.'

"Outside of any purely religious significance, the denominating idea of the *Sabbath* is a day of *rest.* In the *Benjamin case, supra,* the Supreme Court held that under the *police power* of the City Council, all *labor* could be prohibited on Sunday (the Sabbath of the great majority of us), but the question of sports, pastimes, and amusements was not involved in that decision, nor in any decision since that time on the Sunday laws. It may be considered settled by the above case, that it is no infringement on the right of conscience of those who differ with us on the question of the *Sabbath* to prohibit *laboring* on that day, but as to sports and amusements which do not in any manner affect the peace, quiet, and restfulness of Sunday, will the police power of the State extend to such matters and require of those who keep the *seventh* day as the Sabbath, to desist from such games and amusements, which may mean to them relaxation and rest from labor? Again, no matter what may be the religious conviction, if any at all, as to the Sabbath, recognizing also the right to pass laws to secure the peace, quiet, and restfulness of the Sabbath, has the Legislature the right under the police power conferred by the Constitution to make laws prohibiting the doing of acts, innocent of themselves and utterly harmless to others? I think it very doubtful. If this should be true, then the line of demarcation between such power, and the power to enact laws prescribing what a citizen *shall* do on Sunday is extremely shadowy.

"As bearing upon the matter in hand, I will quote from *People v. Poole,* 44 Misc. Rep., 118; 89 N. Y. S., 773.

Judge Gaynor said, considering the Sunday laws of the State of New York:

" 'In the Christian Church there have never been rules prohibiting physical games and exercises on Sundays. Those who say the contrary only speak at random, and from lack of education. Not long ago a complaint was made to the Archbishop of Canterbury that Mr. Balfour, the Prime Minister of England, played the game of golf on Sunday. The Archbishop's official response in writing was that "it is certain that the Christian Church has never laid down detail directions affecting the actions of individuals in this matter. Each of them is responsible to God for so using the Lord's day as to fit him best for the working days that follow." It is not understood that the Legislature meant to be stricter than the divine law of the Hebrew Scriptures, or than the rules of the Christian Church, excepting to the extent to which it has expressly gone.'

"For the above reasons, I think the Statute in question does not cover the game of golf, and should be construed even more strictly than the ordinary criminal Statute."

*Messrs. John M. Daniel, Attorney General, Cordie Page, Assistant Attorney General,* and *D. W. Robinson,* for appellant, cite: *Validity of Statute:* 9 Cal., 502, 519–526; 18 Cal., 678; 242 Pac., 340; 46 A. L. R., 287–8; 177 U. S., 165; 163 U. S., 304; 5 L. R. A. (N. S.), 321-2; 114 S. E., 242; 2 Strob., 521-8; Id., 531; 100 S. C., 247; 74 S. C., 484; 81 S. C., 200; 41 S. E., 990; 29 A. L. R., 1294; 2 Bish. on Crim. L. (9th Ed.) Sec. 951; 37 L. R. A. (N. S.), 118; 25 R. C. L., 1414, 1416. *Christianity in a general sense is a part of the common law of this land:* 1 Bish. on Crim. L. (9th Ed.), Sec. 497; 2 Bish. Crim. L. (9th Ed.), Sec. 74; 143 U. S., 470-1. *Sunday laws liberally construed in respect to the mischief to be remedied:* 25 R. C. L., 1418, Sec. 8; 19 L. R. A., 352-3; 82 Am. Dec., 303. *Cases distinguished:* L. R. A., 1917-E, 316-17. *Equity has no*

*power or jurisdiction to issue an injunction restraining threatened criminal prosecution:* 25 L. R. A. (N. S.), 208; Id., 193; 125 N. Y., 784; 74 S. C., 83; L. R. A. (N. S.), 633; Storey's Eq. Jur., Sec. 893; 124 U. S., 210; Rose's Notes and Cases, 23, 131; 172 U. S., 31; 5 Pom. Eq. Jur., Sec. 1890. *Cases distinguished:* 72 S. C., 96. *Distinction obtains, and equitable jurisdiction exists, to restrain criminal prosecution under unconstitutional enactment, when the prevention of such prosecution is essential to protection of property:* 263 U. S., 214; 264 U. S., 143; 239 U. S., 37-8; 223 U. S., 621; 125 N. Y., 784.

*Messrs. Henderson & Salley,* and *Williams, Croft & Busbee,* for respondents, cite: *Statute:* Sec. 715, Code. *Does not prohibit playing of golf on Sunday:* 114 Pac., 1125; 131 A. S. R., 339; 41 L. R. A. (N. S.), 408; 80 A. S. R., 628; 32 L. R. A. (N. S.), 1186; 21 Ann. Cas., 679; 108 N. Y. S., 208; Id., 209; Id., 205; 111 N. Y. S., 690; 114 N. Y. S., 594; 118 N. Y. S., 181; 109 N. Y. S., 545; 25 R. C. L., 1427; 31 C. L. J., 664. *Golf not in existence at time Statute passed, not covered by same:* 80 A. S. R., 639; 4 A. L. R., 369; 30 L. R. A. (N. S.), 465. *Statute unconstitutional:* Art. 1, Sec. 5, Const.; 4 Wall., 521; 14th Amend. Fed., Const.; 165 U. S., 589; 184 U. S., 425; 236 U. S., 1; 262 U. S., 390; 268 U. S., 510; 240 U. S., 328; 6 R. C. L., 278. *Extent of police power of State:* 53 S. C., 279. *Golf does not come within police power:* L. R. A., 1917–E, 316. *Religious freedom:* 12 Ann. Cas., 1094; 32 L. R. A. (N. S.), 1198; Ann. Cas., 1913–E, 935. *Injunction of criminal prosecution; when proper:* 74 S. C., 480; 195 U. S., 223; 72 S. C., 92; 226 U. S., 616; 187 U. S., 94.

January 20, 1928.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The plaintiffs instituted these actions in the Court of Common Pleas of Aiken County for the purpose of enjoining and restraining the defendants, and all law officers of this State, from arresting those who play golf, or attempt to play golf, on the Palmetto Golf Club links and on the Highland Park Golf course on the Sabbath day. In each of the cases a demurrer was interposed on the part of the defendants. By consent of all the parties interested, the two cases were heard together on circuit before his Honor, Judge H. F. Rice, and the appeals were heard together in this Court.

The demurrers of the defendants were overruled, and the injunctions prayed for were granted by the Circuit Judge. It is from this order that the defendant appeals.

The main questions raised by the appeal are those stated. in the opinion of the Chief Justice as follows:

"(1) Is the playing of golf on Sunday a violation of the criminal laws of this State?

"(2) Can a Court of equity enjoin officers from prosecuting parties for violation of the criminal laws of the State, under the circumstances alleged in the complaint herein?"

Along with the main issues, as stated, we think there are certain other incidental questions involved in the causes, to which it is proper that attention be called herein, and which should be passed upon and decided at this time by this Court.

The case, as made by the respondents, requires only a construction of Section 715 of Volume 2 of the Code of 1922. To properly consider all the issues which we think should be determined, we regard it as necessary to also refer to, and to construe, Section 713 of the same volume. Both Sections are found in Chapter 16 of Volume 2 of the Code, which is entitled, "Nonobservance of the Lord's Day and Disturbing Religious Worship." We turn first to Section 715, which is as follows:

"(715) Sec. 3. *Public Sports Prohibited on the Lord's Day.*—No public sports. or pastimes, as bear baiting, bull baiting, football playing, horse racing, interludes or common plays, or other games, exercises, sports or pastimes, such as hunting, shooting, chasing game, or fishing, shall be used on the Lord's Day by any person or persons whatsoever; and every person or persons offending in any of the premises shall, upon conviction, be deemed guilty of a misdemeanor, and be subject to a fine not to exceed fifty dollars, or imprisonment not to exceed thirty days."

We are in thorough accord with the holding in the opinion of the Chief Justice to the effect, that the section quoted does not prohibit the *playing* of golf on the Lord's Day (commonly called Sunday) as a "game, exercise, sport or pastime." And we are unable to find any other legislative enactment which prohibits the *playing* of golf on the Sabbath.

In connection with the view we have expressed, however, and, as indicated before, we must not overlook the provisions of Section 713 of the Criminal Code, which are as follows:

"(713) Sec. 1. *Penalty for Working on Sunday.*—No tradesman, artificer, workman, laborer, or other person whatsoever, shall do or exercise any worldly labor, business or work of their ordinary callings upon the Lord's Day (commonly called the Sabbath), or any part thereof (work of necessity or charity only excepted); and every person being of the age of fifteen years or upwards, offending in the premises, shall, for every such offense, forfeit the sum of one dollar."

While one who *plays* golf as an "exercise, sport or pastime" on Sunday does not commit a misdemeanor, as defined in Section 715, it seems clear to us that one "of the age of fifteen years or upwards," who engages in the game of golf as a "professional," and one who teaches or instructs

the playing of the game, in such a way as to make it his "worldly labor, business, or work" of his "ordinary calling," and who· *does not exercise* such "wordly labor, business or work, * * * upon the Lord's Day (commonly called the Sabbath), or any part thereof," violates the provisions of Section 713.

In line with our view, it is unlawful for any person of the age of 15 years or upwards to engage in the work of a caddie on Sunday for remuneration or compensation, as such work is properly classed as "worldly labor, business or work" within the meaning of Section 713.

Further construing Section 713, it is also our opinion that it is unlawful for any person of the age of 15 years or upwards, who may own, lease, keep, or maintain any golf links or golf course, or other ground for the playing of golf as his "business," to "exercise" such business upon the Sabbath.

In considering the two Sections (713 and 715) together, as we should do, with reference to the matters at issue in this cause, the distinction we wish to make, and do make, is this: That it is not unlawful for one to engage in the game of golf as an exercise, sport, or pastime on Sunday, but it is unlawful for one in any way or manner to engage in golf as a worldly labor or business on Sunday.

In harmony with the opinion of this Court in the case of *Charleston Oil Co. v. Poulnot,* 143 S. C., 283, 141 S. E., 154, filed along with the opinion in this case, we hold, under the authority of the decision of this Court in the case of *State v. Southern Express Co.,* 107 S. C., 349; 92 S. E., 1054, that the provisions of Sections 713 and 714 do not in any way apply to corporations; but the said sections do apply to officers, agents, servants and employees of corporations who may violate the provisions thereof.

Having disposed of the first main question and the issues incidental thereto, we next turn to the second question, made

by the exceptions of the appellants, that alleged error on the part of the Circuit Judge in granting the injunctive relief that was prayed for.

The rule adopted by this Court as to enjoining the prosecution, or threatened prosecution, of persons for violation of the criminal laws was clearly stated by Mr. Justice Jones as follows:

"Ordinarily a Court of equity has no jurisdiction to restrain criminal proceedings unless such proceedings are instituted by a party to the suit in equity to try the same right in issue before the Court of equity. *In re Sawyer* [124 U. S., 200], 8 S. Ct., 482 [31 L. Ed., 402]. *Crighto v. Dahmer,* 70 Miss, 602 [13 So., 237]; 21 L. R. A., 84, and note, 35 Am. St. Rep., 666, and note at page 677; 5 Am. & Eng. Dec. in Equity, and citations at page 51. But when the ordinance or Statute under which the prosecutions are had is clearly void and irreparable injury to property rights may result for its enforcement, equity may interfere. *Dobbins v. Los Angeles* [195 U. S., 223]; 25 S. Ct., 22 [49 L. Ed., 169]. *Georgia R. & Banking Co. v. Atlanta* [118 Ga., 486]; 45 S. E., 258, following *City of Atlanta v. Gate City Gaslight Co.,* 71 Ga., 126; 16 Ency. Law, 372." *Cain v. Daly,* 74 S. C., 480; 55 S. E., 110.

It will thus be seen that the doctrine recognized in this State is that a Court of equity will only restrain a criminal prosecution when (1) there is a suit pending in equity, (2) in which it is sought to try the same right in issue in the criminal proceeding, and (3) such criminal prosecution is instituted by one party to this pending suit against the other, *except* (1) when the prosecution is instituted under an ordinance or Statute which is clearly void, *and* (2) irreparable injury to property rights may result from its enforcement.

It must be conceded that, at the time of the threats made by the appellants to institute criminal prosecutions against the respondents for alleged violations of Sections 713 and 715 of the Criminal Code, there was no suit pending in the Court of equity to try any issue whatsoever between these parties, that such proceedings were not, therefore, instituted by any party to such suit, and the rule above stated cannot be revoked to sustain the order of injunction.

The next inquiry is to determine whether the *exception* to the rule may be invoked for this purpose.

An analysis of the utterance of the Court on the question will show that the requirements are twofold; namely, a *void* ordinance of Statute, under which the prosecution is instituted, and irreparable injury to property rights.

The constitutionality of Section 713 has been consistently recognized by this Court from the time of the decision of the case of *City Council of Charleston v. Benjamin,* 2 Strob. Law (33 S. C. L.), 521; 49 Am. Dec., 608, decided in 1846. The holding of the *Benjamin case* was referred to with approval as recently as 1914, when this Court decided the case of the *State v. Hondros,* 100 S. C., 242; 84 S. E., 781. In order to determine the issues raised in this case, it may not seem necessary to expressly pass upon the constitutionality of Section 715, but it is manifest to us that all the authorities, which have heretofore sustained the constitutional validity of Section 713, require also a declaration on the part of this Court in favor of the constitutionality, both State and Federal, of Section 715.

If, then, the order of injunction cannot be sustained by an application of the rule recognized in this State, owing to the absence of conditions upon which the operation of the rule is predicated, and cannot be brought under the exception to the *rule,* by reason of the absence of one of the

essential requirements upon which the *exception* is based, namely the *unconstitutionality* of the Statutes, it is difficult to conceivé how the order of the presiding Judge can be sustained in this jurisdiction under any view.

It seems, in view of the plain utterance of our own Court on this question, that, unless a criminal prosecution is instituted by a *party* to a "pending suit" in equity to try the same right which is in issue before the Court the constitutionality of the ordinance or Statute in question is essentially involved in every controversy in which it is sought to invoke the equity jurisdiction of the Court to restrain a criminal prosecution. The Statutes sought to be enforced by the respondents being valid enactments, it was error, in our opinion, that their enforcement be enjoined.

We have read with much interest the learned and lucid arguments of both counsel for the appellants and for the respondents in this cause, in which they have cited numerous authorities from the Courts of the United States and from other state jurisdictions, and in which they have set forth many interesting questions concerning the effect of the Statutes under consideration. We have thought best, in deciding the issues raised, to confine ourselves strictly to the Statutes of this State and to the decisions of this Court. We find that little assistance may be gained by a study of the decisions of foreign jurisdictions as to the Statutes involved in this cause, as the Statutes in the many States pertaining to the observance of the Sabbath day are so different from the wording of our own enactments pertaining to that subject. We have carefully avoided in this opinion any discussion of the propriety. or impropriety of our Statutes, or the inconsistencies that may appear from a study of them, or that may arise from their rigid enforcement. With matters of such natures, this Court has nothing to do. Our duty is not to make the

laws; we are confined to a construction of the laws as they have been written.

The judgment of this Court is that the restraining orders granted by the Circuit Judge be, and they are hereby, dissolved.

MR. JUSTICE STABLER concurs.

MR. JUSTICE CARTER (concurring): I concur in the views expressed in the opinion of Mr. Justice Blease, that the playing of golf on Sunday, under the conditions described, in his opinion, is not a violation of the criminal laws of this State. Whether or not such Acts should be prohibited is a matter for the consideration of the legislative branch of the government, and not for this Court. Under the Constitution of South Carolina, the three branches of the government, legislative, judicial, and executive, have separate functions to perform, and one branch of the government must not encroach upon the other, it matters not what may be the views of the individual members of one branch, as to what the law should be on this or any other subject.

As to the question of injunction, it is my opinion that the facts of this case do not come within the requirements necessary for issuing an injunction, either under the decisions of this Court, or the decisions of the United States Supreme Court. According to my view, the principle stated in the case of *Cline v. Fink Dairy Co.,* 274 U. S., 445; 47 S. Ct., 681; 71 L. Ed., 1146, and the case of *Tyson v. Banton,* 273 U. S., 418; 47 S. Ct., 426; 71 L. Ed., 718, cited by respondent, to which special attention was called, are not applicable to the case at bar. The cases are distinguishable.

MR. JUSTICE COTHRAN (concurring and dissenting): I concur in so much of the opinion of Mr. Justice Blease as holds:

(1) That "one who plays golf, as an 'exercise, sport or pastime,' on Sunday," cannot be convicted, as for a misdemeanor, under Section 715 of the Criminal Code, for the reasons so clearly expressed by him; that such conduct is not inhibited by the Statute:

(2) That consequently "it may not seem necessary to expressly pass upon the constitutionality of Section 715."

I dissent from so much of it as holds: "But it is manifest to us that all the authorities, which have heretofore sustained the constitutional validity of Section 713, require also a declaration on the part of this Court in favor of the constitutionality, both State and Federal, of Section 715"— and from so much of it as dissolves the injunction decree signed by his Honor, Judge Rice.

I do not mean to disagree with the conclusion as to the constitutionality of either Section 713 or 715; but, as that issue is not, as stated, necessary to be decided, I prefer to reserve my opinion for the occasion when it does become necessary. It seems very clear that, if the conduct complained of is not within the inhibition of the Statute as held in the opinion, and with which conclusion I agree, it becomes a work of supererogation to discuss the question of the constitutionality of the Statute.

The principal point of difference between the learned justice and myself is the dissolution of the injunction. I deem it manifest that the action was brought to determine the very issue which has been determined in the opinion, that playing golf on Sunday is not a crime under Section 715. The injunction is a harmless appendage to that determination, for any officer hereafter will respect the determination as greatly without the injunction as with it.

I think, however, that the decree of his Honor, Judge Rice, as to the right of the plaintiffs to an injunction under the circumstances, is entirely convincing. There is no question but that large property rights are involved in the con-

troversy; the fine distinction is drawn between an objection to a criminal Statute upon the ground of its unconstitutionality, and an objection upon the ground that it has no application to the facts admitted. I· think that the authorities hold that an injunction may issue against a prosecution under a Statute which has no application to · the conduct of the defendant, as well as under a Statute which is unconstitutional; the invasion of the rights and liberty of the defendant is as obnoxious in the one case as well as in the other.

There is no question as to the correctness of the rule laid down in the case of *Cain v. Daly,* 74 S. C., 480; 55 S. E., 110:

*"Ordinarily* a Court of equity has no jurisdiction to restrain criminal proceedings unless such proceedings are instituted by a party to the suit in equity to try the same right in issue before the Court of equity. * * * But, when the Ordinance or Statute under which the prosecutions are had, *is clearly void* and irreparable injury to property rights may result for its enforcement, equity may interfere * * * (citing cases)."

It seems to be apprehended that a Statute is not *void* unless it be unconstitutional, and the rule˙ deduced is that there can be no injunction except where the *void* character of the Statute lies in its unconstitutionality.

It is as void with reference to particular conduct not within its inhibition, as if it were wholly unconstitutional; the inconvenience and damage to the party about to be arrested is as great in the one instance as the other.

The two distinct grounds of equitable interference are paralleled in the case of *Philadelphia Co. v. Stimson,* 223 U. S., 605; 32 S. Ct., 340; 56 L. Ed., 570. In that case the Secretary of War had been authorized by act of Congress to establish certain harbor lines at Pittsburgh; the suit in equity was to enjoin the Secretary of War from in-

stituting criminal prosecutions against the complainants because of their encroachments beyond the established lines. The bill did not question the constitutionality of the Statute, nor the official discretion of the Secretary of War, *"but challenged his authority to do the things of which complaint was made.* The suit rests upon the charge of *abuse of power."* Against the objection that an injunction to restrain a criminal prosecution would not lie, the Court said:

"The exemption of the United States from suit does not protect its officers from personal liability to persons whose rights of property they have wrongfully invaded * * * (citing cases). And in case of an injury threatened by his illegal action, the officer cannot claim immunity from injunction process. The principle has frequently been applied with respect to State officers seeking to enforce unconstitutional enactments * * * (citing cases). And it is equally applicable to a federal officer acting in excess of his authority or under an authority *not validly conferred."*

Further the Court said:

"Where the officer is proceeding under an unconstitutional act, its invalidity suffices to show that he is without authority, and it is this absence of lawful power and his abuse of authority in imposing or enforcing in the name of the State unwarrantable exactions or restrictions, to the irreparable loss of the complainant, which is the basis of the decree. * * * And a similar injury may be inflicted, and there may exist ground for equitable relief, when an officer, insisting that he has the warrant of the Statute, *is transcending its bounds,* and thus unlawfully assuming to exercise the power of government against the individual owner, is guilty of an invasion of private property. * * * If the complainant's rights, as against the defendant, were as claimed, it was entitled to adequate protection. And, in such case, the remedy might properly embrace *the restraining of unfounded prosecutions."*

If property rights should be so jealously protected as indicated in the case referred to, the Court would hardly less energetically protect the personal liberty of the citizen.

The Stimson case cites the case of *American School v. McAnnulty*, 187 U. S., 94; 23 S. Ct., 33; 47 L. Ed., 90. In that case an Assistant Postmaster General of the United States, claiming to act under authority of the Statute, debarred certain literature advertising magnetic healing from the mails. The decision of the Supreme Court of the United States was that the Statute manifestly did not cover such a case as that presented by the mailing of the literature, that the property rights of the plaintiff were involved, and that an injunction against their infringement through invoking a Statute that manifestly did not prohibit the mailing of such literature was proper. The Court said:

"The facts, which are here admitted of record, show that the case is not one which by any construction of those facts is *covered or provided for by the statutes* under which the Postmaster General has assumed to act, and his determination that those admitted facts do authorize his action is a clear mistake of law as applied to the admitted facts, and the Courts therefore must have power in a proper proceeding to grant relief."

In 32 C. J., 282, it is said:

"\* \* \* An exception to the general rule very generally is recognized in decisions holding that where the statute or ordinance under which complainant is being prosecuted is unconstitutional *or for any other reason void,* and the prosecution will involve a direct invasion of property rights, and will result in irreparable injury thereto, an injunction may be granted to restrain the commencement or continuance of criminal proceedings based on such statute or ordinance" (citing numerous cases).

If the Statute in question has no application to playing golf on Sunday, as a pastime, there is no Statute against it.

It seems to me that a threatened prosecution for conduct not covered by any criminal Statute is not less reprehensible than one under a Statute that is unconstitutional or otherwise void.

I think therefore that the decree of his Honor, Judge Rice, should be affirmed in all respects.

Mr. Chief Justice Watts (dissenting) : This is an appeal from an order of injunction by his Honor, Judge Rice. The following is the statement of the case:

"These were two cases tried together upon the complaint and demurrer; both cases involving practically the same pleadings and issues of law. The issues made by the pleadings on the hearing were:

"(1) Is the playing of golf on Sunday a violation of the criminal laws of this State?

"(2) Can a Court of equity enjoin officers from prosecuting parties for violation of the criminal laws of the State, under the circumstances alleged in the complaint herein?"

The cause was most ably argued before us by both sides, and the authorities were cited from all the Courts that have passed upon the issues raised in the instant case. The thorough manner in which the case was argued and the citation of authorities have saved the Court much labor.

The initial vital question presents a clearcut question of law for the solution of the Court; it is whether or not playing golf on Sunday is prohibited by Section 715 of the Criminal Code of this State. As to playing golf on Sunday, the New York Court, *in re People v. Poole,* 44 Misc. Rep., 118; 89 N. Y. S., 773, uses this language:

"Physical exercises and games are not forbidden on the Sabbath in the Ten Commandments. Only work is there prohibited.  * * *  In the Christian Church there never have been rules prohibiting physical games and exercises on Sunday. Those who say the contrary only speak at random,

and from lack of education. Not long ago a complaint was made to the Archbishop of Canterbury that Mr. Balfour, the Prime Minister of England, played the game of golf on Sunday. The Archbishop's official response in writing was that 'it is certain that the Christian Church has never laid down detailed directions affecting the actions of individuals in this matter. Each of them is responsible to God for so using the Lord's Day as to fit him best for the working days that follow.' It is not to be understood that the Legislature meant to be stricter than the divine law of the Hebrew Scriptures, or than the rules of the Christian Church excepting the extent to which it has expressly gone."

Section 715 of Criminal Code is:

"No public sports or pastimes, as bear baiting  * * * football playing, horse racing, interludes or common plays, or other games, exercises, sports or pastimes, such as hunting, shooting, chasing game, or fishing shall be used on the Lord's Day by any person or persons whatsoever.  * * *"

This Statute, in its original form, was enacted in South Carolina in 1691, 2 Stat., 68.

The fact that a penal Statute must be strictly construed, and will not by the Courts be stretched to make criminal conduct by the individual which the Statute does not clearly prohibit, is elementary.

The South Carolina Statute cannot be construed as prohibiting playing golf on Sunday, for the following reasons:

(1) In so far as the word "public" runs through the Statute, it refers solely to "sports and pastimes" which the public pays an admission price to enter and view. *Cheeves v. State,* 50 Okl. Cr., 361; 114 P., 1125, reported in note to *State v. Chamberlain,* 21 Ann. Cas., 681.

A game of Sunday baseball for which no admission fee is charged is not a "public sport" within the meaning of an act prohibiting "public sports" on the first day of the week, and, where no wager is laid upon the result, it is not

within a Statute prohibiting "all shooting, sporting, horse racing, gambling, or other public sports upon the first day of the week."

It is also equally clear that it was not the intention of the Legislature to prohibit all kinds of sports on the Sabbath, but that the provisions of the law are aimed at only public sports participated in on the Sabbath, and that it was not the intention of the law-making power to include private sports therein.

Private sports are those which are engaged in for the entertainment and pleasure of those who participate therein. Public sports are those which are engaged in for the entertainment and pleasure of the public. Because other persons than those engaged in a private sport may be entertained thereby would not bring such private sport within the meaning of the law. As the law does not make private sports an offense against the Statute, but confines its penalties to those who engage in public sports, a line of demarcation must exist which will distinguish public sports from private sports. In order to constitute a public sport, it must have been given for the entertainment of the public, which is evidenced by the fact that it is paid for by the public. When a game of baseball is played on the first day of the week, and an admittance fee is charged for witnessing the same, this fixes the character of such game as a public sport, and all who engage or take part in it are liable to prosecution and conviction under the law.

The allegation in the complaints, admitted by the demurrers, is that golf, as played upon the two golf courses, is not a public sport or pastime, but is played in a private park from which the public is excluded.

(2) Under the well-known rule of *ejusdem generis* there can be no conviction of playing golf on Sunday under Section 715, unless golf is such a game, exercise, sport or pastime as "hunting, shooting, chasing game, or fishing."

The proper construction of the so-called Sunday law has been before many Courts, and the rule established is that no sport is prohibited under the Statute which expressly prohibits other sports, unless the sport in question is specifically named, or unless it is of the same general character as those prohibited; unless it is *ejusdem generis* to the sport specifically prohibited.

The Statute, after disposing of public sports, prohibits "other games, exercises, sports or pastimes such as hunting, shooting, chasing game, or fishing."

I think the case of *State v. Prather,* 79 Kan., 513; 100 P., 57; 21 L. R. A. (N. S.), 23; 131 Am. St. Rep., 339, is conclusive of the present inquiry. The Kansas Statute considered by the Court was as follows:

"Every person who shall be convicted of horse racing, cockfighting, or playing at cards or game of any kind, on the first day of the week, commonly called Sunday, shall be deemed guilty of a misdemeanor, and fined not exceeding fifty dollars."

The Court said:

"The State contends that the words, 'game of any kind,' include baseball. On the other hand, the contention is that the Statute must be construed strictly, and that the meaning of the general words 'game of any kind,' is limited by the particular words which precede them, and that they include only games of the class or species to which horse racing and cockfighting belong. * * *

"In the broad sense in which the word is often used it includes baseball. Giving to the language this interpretation, the Statute necessarily applies to every contrivance or institution which falls within the general term. This construction would make the Statute apply to every game—to authors, whist, chess, checkers, backgammon, and cribbage, even when played within the privacy of one's home, and to croquet, basketball, tennis, and golf, whether played · in

public or on private grounds. It hardly seems probable that it could have been the intention of the Legislature to enact a provision so drastic in its terms as to make the playing of all games on Sunday misdemeanors, without regard to their character, and with no limitations or reservations with respect to the place where, or the circumstances under which, they might be indulged in."

Also *Territory v. Davenport,* 17 N. M., 214; 124 P., 795; 41 L. R. A. (N. S.), 408.

In *Ex parte Neet,* 157 Mo., 527; 57 S. W., 1025; 80 Am. St. Rep., 638, construing a Missouri Statute, reading as follows: "Every person who shall be convicted of horse racing, cockfighting, or playing at cards or games of any kind on the first day of the week, commonly called Sunday, shall be deemed guilty of a misdemeanor, and fined not exceeding fifty dollars"—the Court said:

"The doctrine of *ejusdem generis* is as rock-ribbed in the law of this State as any principle ever announced. As applied to penal Statutes especially, it is only a humane doctrine, and accentuates the wisdom of the fathers when they objected to being punished for offenses which had not been declared to be offenses by the law. It observes the respective rights of the different co-ordinate branches of the government by requiring the Legislature to enact laws and the judiciary to enforce, but not create, the laws—not even by construction. Baseball does not belong to the same class, kind, species, or genus as horse racing, cockfighting, or card playing. It is to America what cricket is to England."

In *Ex parte Roquemore,* 60 Tex. Cr. R., 282; 131 S. W., 1101; 32 L. R. A. (N. S.), 1186, we find: A Texas Statute (Pen. Code 1895, Art. 199) prohibited the opening on Sunday "of any place of public amusement," and then added:

"The term 'place of public amusement' shall be construed to mean circuses, theaters, variety theaters, and such other amusements as are exhibited and for which an admission fee is charged; and shall also include dances at disorderly houses, low dives, and places of like character with or without fees of admission."

The Supreme Court of Texas said:

"It will be noted that this article undertakes to name and designate the places of public amusement, and it is said that it shall be so construed as to mean circuses, theaters, variety theaters, and such other amusements as are exhibited and for which an admission fee is charged, and shall also include dances at disorderly houses, low dives, and places of like character with or without fees for admission. That baseball is not specifically named of course is clear. What are we to understand by the general term 'and such other amusements as are exhibited and for which an admission fee is charged'? Clearly we think amusements of a like or similar character. This seems to have been the construction given to a similar Statute by many Courts. It has been said that baseball is not prohibited by a Statute which provides for the punishment of any one convicted of horse racing, cockfighting, or playing at cards or game of any kind on Sunday. *State v. Prather,* 79 Kan., 513; 100 P., 57; 21 L. R. A. (N. S.), 23; 131 Am. St. Rep., 339. To the same effect, see *Ex parte Neet,* 157 Mo., 527; 57 S. W., 1025; 80 Am. St. Rep., 638. *St. Louis Agri. & Mechanical Asso. v. Delano,* 108 Mo., 217, 18 S. W., 1101."

The Supreme Court of Texas then discussed the doctrine of *ejusdem generis* at length and defined it as follows:

"It is a principle of statutory construction everywhere recognized and acted upon, not only with respect to penal Statutes, but to those affecting only civil rights and duties, that where words particularly designating specific acts or things are followed by and associated with words of gen-

eral import, comprehensively designating acts or things, the latter are generally to be regarded as comprehending only matters of the same kind or class as those particularly stated. They are to be deemed to have been used, not in the broad sense which they might bear, if standing alone, but as related to the words of more definite and particular meaning with which they are associated."

The Court then proceeded to hold:

"Following this construction, it occurs to us that baseball is not in fairness included in this Statute. It is elementary, before a citizen can be punished as a criminal, that the offense must be clearly defined by Statute, and an appropriate penalty affixed thereto. Further, it is a rule of construction well known that, in undertaking to fix and place meaning upon Statutes, we should do so in the light of contemporaneous history, and in reference to the habits and activities of our people. It is known, of course, that baseball is the most generally practiced, patronized, and approved of all the games of exercise, and that it is the cleanest and fairest of all manly sports, and excites rivalry in the youths of our land, and that every village and hamlet has its favorite nine, and that in every village and hamlet many ambitious youths dream of the day when they shall equal if not excel Matthewson, Speaker, Cobb, Napoleon La Joie, and Honus Wagner. It is also well known that for many years, in many of our larger cities, baseball on Sunday has been not only frequently but continuously played where an admission fee was charged. Now it would have seemed, in the light of these facts, that, if it had been the legislative intent to condemn this form of amusement and include it within the Statute under consideration, it would have been an easy matter to have done so in express words, and not left the matter at least clouded in doubt."

Also *State v. Chamberlain,* 112 Minn., 52; 127 N. W., 444; 30 L. R. A. (N. S.), 335; 21 Ann. Cas., 679.  New

York cases are *People v. Flynn* (Sup.), 108 N. Y. S., 208. *People v. Lynch* (Sup.) 108 N. Y. S., 209. *Keith & Proctor Amusement Co. v. Bingham* (Sup.), 108 N. Y. S., 205. *People v. Hemleb,* 127 App. Div., 356; 111 N. Y. S., 690. *William Fox Amusement Co. v. McClellan,* 62 Misc. Rep., 100; 114 N. Y. S., 594. *Edwards v. McClellan* (Sup.), 118 N. Y. S., 181. *Weisblatt v. Bingham,* 58 Misc. Rep., 328; 109 N. Y. S., 545.

"A Statute prohibiting certain specified public amusements and other like and similar amusements on Sunday does not apply to any not named unless they are *ejusdem generis.*"   25 R. C. L., 1247.

Under the Statute of South Carolina as amended by the Legislature in 1896, playing golf on Sunday is not a violation of the Sunday laws.   Golf playing and baseball were unknown when the Statute was first passed.

As to the injunction feature, it is a dangerous thing in enjoining criminal prosecutions; it can be done in some cases, but the Court ought to be very careful in doing so.

In *Cain v. Daly,* 74 S. C., 480; 55 S. E., 110, the Court specifically recognized the rule established by the Supreme Court of the United States in *Dobbins v. Los Angeles,* 195 U. S., 223; 25 S. Ct., 22; 49 L. Ed., 169, that ordinarily the enjoining of criminal prosecutions is not proper, but that, where the prosecution is about to be brought under a Statute which is either void or unconstitutional, an injunction is proper provided property rights are involved.

The allegations of the complaints allege that serious and valuable property rights are involved in the cases.   The demurrer admitted that fact.   *Riley v. Town of Greenwood,* 72 S. C., 92; 51 S. E., 532; 110 Am. St. Rep., 592.

All exceptions should be overruled, and judgment should be affirmed.