CRAWFORD *v.* CITY OF PASCAGOULA.

[85 South.  181, In Banc.  No. 21244.]

SUNDAY.  *Law prohibiting showing of "plays of any kind" forbids a showing of moving pictures for an admission.*

   Section 1368, Code of 1906 (section 1104, Hemingway's Code), prohibiting the exhibiting, showing forth, etc., of "any interludes, farces, or plays of any kind," etc., includes showing by means of moving pictures where an admission fee is charged. The purpose of the statute was to prevent all kinds of shows, plays, and amusements that tend to profane the Sabbath.

APPEAL from circuit court of Jackson county.
HON. D. M. GRAHAM, Judge.

C. V. Crawford was convicted of operating a moving picture show on Sunday, for an admission, in the city of Pascagoula, and he appeals.    Affirmed.

*Denny & Heidelberg,* for appellant.

As stated in the statement of facts, this case hangs and depends upon whether or not section 1368, Code 1906, section 1104, Hemingway's Code, can be construed to include what is known in this day and generation as a moving picture show. Said section is found to be in the following words: "Sabbath, Farces, Plays, Games. —If any person shall engage in, show forth, exhibit, act, represent, perform or cause to be shown forth, acted, represented or performed, any interludes, farces, or plays of any kind or any games, tricks, ball-playing of any kind, juggling, sleight of hand, or feats of dexterity, agility of body, or any bear baiting or any bull fighting, horse racing or cock-fighting or any such like show or exhibit whatsoever, on Sunday, every person so offending shall be fined nor more than fifty dollars."

The above section with but two slight amendments has been brought forward from all the codes since Hutchinson's (See chapter 64, section 7, article 4, Hutchinson's Code) about the only amendments of the same has been to add the words "ball-playing" and an increase in the penalty provided for its violation. Code 1857, article 227, page 609, Crimes and Misdemeanors; Code 1871, section 2681; Code 1880, section no. 2951; Code 1892, section 1293.

Does this section cover or include within its scope what the world now knows as a moving picture show. If it does it must do so under and by virtue of the doctrine of *ejusdem generis.* The statute does not contain the word "picture show" or any kindred term, the nearest approach to such words are the words "or any such like show" and this wording extends many years back as will be found by a reading of the statute. 36 Cyc., page 1120, in discussing the doctrine of *ejusdem generis* says: "the words 'other' or 'any other' fol-

lowing an enumeration of particular classes are therefore to be read as 'other such like' and to include only others of like kind or character."

We have been unable to find any statute of other states that is similar in wording exactly to the Mississippi statute in question, yet in the case of *R. G. W. Hull,* 110 Pacific, 30 L. R. A. 465 (N. S.), it was held that: "In order to bring a public amusement not specifically enumerated by the statute under the general language of any such place of public amusement the likeness or similarity must exist in something other than the fact that it is a public amusement and must, in a general way, correspond to the amusement specified. Again, in the case of *State* v. *Penny,* 111 Pacific 727, 31 L. R. A. (N. S.), 1155, in construing a statute in the following words, "every person who on Sunday, or the first day of the week, keeps open or maintains, or aids in keeping open or maintaining, any theatre, playhouse, dance house, race track, gambling house, concert saloon, or variety hall is guilty of a misdemeanor. The court in this case held that the operation of a moving picture show was not within the meaning of the statute.

Again, the statute under which the defendant was tried and convicted in the case at bar is one of ancient history in Mississippi, so to speak. In its present form it has been brought forward unchanged from the Code of 1892 and with but little change before that time; the Code of 1892 adding the words "ball playing" over and above what was contained therein. By the Code of 1880, Games were mentioned in the act or statute prior thereto, but yet the legislature, it seems, recognizing the principle that new things must be considered, added the words "ball playing" and this was done about the time base ball begun to make its appearance in this state to any appreciable extent. A moving picture is not an interlude, farce or play. In the

picture the actors are not present upon the stage; in fact they may be at the antipodes at the time the picture is flashed upon the canvas in any town that has arrived at the dignity of maintaining a picture show. It is the scene alone that is flashed upon the canvas and at the time of the placing of the statute in question upon the statute books of the state of Mississippi the moving picture machine was unknown and probably undreamed of, at least by the members of the legis-lature who framed the statute.

In the case of *State* v. *Nashville Baseball Association,* reported in the 211 S. W. 257, 4 A. L. R. 368, the supreme court of the state of Tennessee says, quoting the syllabus: "statute prohibiting the playing of any game of sport on Sunday does not apply to the subsequently invented game of base ball. To the same effect is the case of *Ex Parte Neet,* 157 Mo. 527, 80 A. St. R. 638; see, also, *State* v. *Prather,* 79 Kans. 513, 21 L. R. A. (N. S.), 23, 131 A. St. R. 689, 100 Pac. 57.

New York state, it seems, had had the question up, not upon a similar statute to ours, but something akin to it, and while it seems that the courts of that state at one time departed from the rule that a moving picture was not in the nature of a theatre or play, yet the later decision seems to indicate that the courts of that state are going back on their original position that a moving picture show is not a theatre play, or such an exhibition as is condemned or falls within the prohibition of our statute. See *People* v. *Hemle,* 111 N. Y. Supp. 690; *Amusement Co.* v. *McClelland,* 62 Misc. 100 N. Y. Supp. 594; *Edwards* v. *McClelland,* 118 N. Y. Supp. 181; *State* v. *Chamberlain* (Minn.), 127 N. W. 444.

Times have and are changing; old statutes must either be rewritten or new ones enacted to cover the various changes in the times, and until the legislature of our state sees fit to include moving pictures or the

reproduction of them upon a screen or canvas upon Sunday, we contend that there is, so far at least as the section under controversy is concerned, no statute against exhibiting them upon Sunday.

Again, criminal statutes are to always be strictly construed; and we submit that it would require a very liberal construction of the statute in question here to include within the things prohibited by it or by any inference it prohibits, something that was invented or started years after the statute was enacted and passed by the legislature in its present form.

*H. B. Everitt,* for appellee.

This old statute of Mississippi, that is just about as old as the state itself, for the enforcement of the Sabbath day observance that was then conceived to be wholesome for the moral and religious growth of the community, makes use of language broad and comprehensive in meaning. We were then intimately conversant with the great variety of entertainment known as plays, as were the immortal fruits of the greatest of play-writers, Shakespeare, whose writings were known as plays, dramatized into performances known as plays and out of which popular class of entertainment sprang up a great variety of play performances. Hence we find the legal definition of plays to be "dramatic composition for scenic representation by speaking or acting as a tragedy, comedy, farce, "melodrama or pantomine. 30 Cyc. 1643. Now a theatre is a kind of play. 38 Cyc., 253. A farce is a certain type of play. 19 Cyc., 453. Pantomine is a dumb show (Webster) and is connected with and as part of these plays and entertainments we have what is called the tableaux, or living picture. All these are easily comprehended by the old word "play" as used in this old statute in this state.

Having in mind, therefore, this old word "play" how shall we, under the rule of *ejusdem generis,* meaning literally, of the same kind or species, how may we classify a picture show. With the aid of judicial knowledge we know this now common performance as a trick of art giving living attributes to the shadow of a live show, acting a tragedy, comedy, farce, melodrama, pantomine or tableaux, as the case may be, resulting in the scenic representation by acting and by printed words. The scenic effect, the acting and representation of assumed characters, the showing forth of a tragedy and a play is the same as in the living act to all intents and purposes. In neither case is the public entertained by things that are real, but only by representation and reproduction with appeal to the imagination.

The courts of New York have construed the language of penal code of the state prohibiting "public sport, exercise or show" to include moving pictures. *Moore v. Owen,* 58 Misc. (N. Y.) 332, 102 N. Y. 585, and several other decisions as cited by 37 Cyc., 551, note 23. Later cases in that state have drawn a distinction between pictures illustrating lecturers and things of like nature and pictures shown by means of slot machine. Certainly it is not every picture exhibition performance or entertainment that is a play or show just as it is not always shown when living characters perform on the stage.

The character of the performance is just as distinct in the one as in the other. Hence it is that the state of facts upon which this case was tried is important in bringing this performance as coming under the statute of this state and within the language of the affidavit as a play or farce.

Counsel has cited a number of cases and so far as I have examined those cases only one of them was at all in point, holding that a picture show was not a theatre within the language of the statute of that state

and I believe that was the case of *State* v. *Penny*, 111
Pac., but which case I have not before me at present.
My recollection of the case is that the court indulged
in much unnecessary comment and indulged in reasons
for the conclusion that was far-fetched and illogical
that I feel sure this court will not feel constrained to
give weight to that decision in construing our statute.
For instance the court made the argument that the
reasons for prohibiting the one did not apply to the
other, particularly in the matter of the moral effect,
and a police regulation against the theatre on Sunday
as against public morals did not apply to a picture
show, as the law should protect the public morals on
Sunday and not on other days of the week, and much
other argument of the same kind. The well known rea-
son for regulating the observance of the Sabbath day
has a general reference to the moral good by the en-
forcement of a day of rest, quiet and repose, and the
protection of those who desire to engage in religious
worship by acts that are unbecoming and calculated to
disturb and detract. The language of the code as
aided by its observance and accepted meaning in this
state clearly contemplates the suppression of worldly
entertainments presented as a matter of business and
for money, at playhouses and places established in
almost every community, of which the moving picture
presentation of plays in all the different varieties is a
familiar example. This form of show may not, in some
instances, exert as bad effect on the public morals as
the presentation of the same show by living creatures
would exert, but it is a well known fact that in this
line, catering to the lowest tastes and passions of the
public, the moving picture show has been given the last
touches of diabolical conception. If closing entertain-
ments of this kind on the Sabbath day that come within
the language of this statute, as they were known in the
days of its adoption, was a matter of any material im-

portance to the state, and its more modern expression is not reached, then the old statute has lived beyond its day and generation and its day of usefulness, and might as well be repealed.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was convicted under section 1368, Code of 1906 (section 1104, Hemingway's Code), for operating a moving picture show on Sunday and charging admission therefor. This section reads as follows:

"If any person shall engage in, show forth, exhibit, act, represent, perform, or cause to be shown forth, acted, represented, or performed, any interludes, farces, or plays of any kind, or any games, tricks, ball playing of any kind, juggling, sleight of hand, or feats of dexterity, agility of body, or any bear baiting or any bull fighting, horse-racing, or cock fighting, or any such like show or exhibit whatsoever, on Sunday, every person so offending shall be fined not more than fifty dollars."

There was an agreement in the record that the appellant operated a moving picture show on Sunday, and charged an admission fee to all persons entering, that he had paid the license required on the business, and that the picture exhibited on the day in question was entitled The Weaker Vessel, being a comedy and drama, and also a film entitled News Weekly, showing views of different parts of the world's current events. It was agreed that these pictures were moral, and the question presented for decision is whether the theater, exhibiting plays and dramas by means of moving pictures, come within the terms of the statute above set out.

It will be noted that the language of the statute is broad and comprehensive, and we think the moving picture reproduction comes within the purview of the

statute. The language "or plays of any kind," follow-
ing the words "show forth, exhibit, act, represent, per-
form, or cause to be shown forth, acted, represented,
or performed, any interludes, farces," is sufficient to
include the show herein described. The purpose of the
statute was to prevent all business of the kind here in-
volved, and others, which have a tendency to profane
the Sabbath.

The judgment of the court below will therefore be
affirmed.

*Affirmed.*