16460

BISHOP *ET AL.* v. HANNA, SHERIFF, *ET AL.*

(63 S. E. (2d) 308)

*Messrs. John M. Daniel, Attorney General,* and *T. C. Callison, R. Hoke Robinson, James S. Verner,* and *Daniel R. McLeod, Assistant Attorneys General,* of Columbia, *for Appellants,*

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Respondents,*

February 5, 1951.

STUKES, Justice.

Respondents brought this action in equity against State and County law enforcement officers to enjoin threatened interference by them with automobile (stock car) races promoted and conducted by respondents in Florence County, to which admission fees were charged and money prizes awarded to the winners. No question of procedure or remedy arises upon the record.

The defendants, now appellants, demurred upon the ground that the complaint shows that the projected races would violate the terms of Section 1733 of the Code of 1942, which was cited in the complaint. The advertised race which gave rise to the threats of arrest and occasioned the institution of suit was held under the protection of a restraining order and arguments upon the demurrer were heard afterward. The lower Court held that automobile races are not within the ban of Section 1733 because not named and the usual rule of strict construction of criminal statutes prevents a construction which would include automobile races, wherefore permanent injunction was issued. It was held, and there is no appeal, as follows, quoting from the order under re-

view: "These races are promoted by the plaintiffs in an effort to make money for themselves through furnishing entertainment and sport to the public."

The parties to the appeal agree that the sole question for determination is whether the terms of Code Section 1733 prohibit the holding of a, quoting from both briefs, "stock car meet or race on Sunday."

History of the statute is interesting and enlightening. Some of it may be found in the several opinions in *Palmetto Golf Club v. Robinson,* 143 S. C. 347, 141 S. E. 610, 619, the holding of which is summarized in 56 A. L. R. 813. That case controls this because the disposition of it in effect committed the Court to the view that golf, although not included *eo nomine* in the statute, is a sport or game within its terms, and prohibited if public. It seems clear that motor car racing is closer akin to horseracing than golf is to the other games mentioned by name in the statute. Both can be public sports and violative of the statute. The distinction (which causes opposite results) between the Palmetto Golf case and this is that the activity there sought to be prevented perforce the statute was private; here it is public, and even commercialized. In the Palmetto Golf case it was said in the leading majority opinion, by way of express agreement with the dissent of the then Chief Justice Watts, that the *playing* of golf on Sunday is not prohibited. (Emphasis original.) The point is made plain by the following excerpt from the dissenting opinion of the Chief Justice: "It is also equally clear that it was not the intention of the Legislature to prohibit all kinds of sports on the Sabbath, but that the provisions of the law are aimed at only all public sports participated in on the Sabbath, and that it was not the intention of the lawmaking power to include private sports therein. * * * In order to constitute a public sport, it must have been given for the entertainment of the public, which is evidenced by the fact that it is paid for by the public. When a game of baseball is played on the first day of the week, and an admit-

tance fee is charged for witnessing the same, this fixes the character of such game as a public sport, and all who engage or take part in it are liable to prosecution and conviction under the law." The quotation was evidently taken from *Cheeves v. State,* 5 Okl. Cr. 361, 114 P. 1125. Vide, 21 Ann. Cas. 681 and 41 L. R. A., N. S., 408.

Baseball, like golf, is unmentioned in the statute and was likewise unknown at the time of the original enactment but professional exhibition of it was apparently considered, without question, by the Court and all concerned in *Greenville Baseball v. Bearden,* 200 S. C. 363, 20 S. E. (2d) 813, to be within the inhibition of the statute. And there should be no doubt of the fate of the question if it had been presented in that controversy.

Sabbath observance was required by law at a very early date in the history of the Province of Carolina. The first enactment appears to be that of December 1691. II Statutes of South Carolina (Cooper's Compilation) 68. The law was quite detailed but did not include prohibition of sports; it was held to be inoperative because obsolete in *O'Hanlon v. Myers,* 10 Rich. 128. There followed in the year 1712, quoting from the title, "An Act for the better observation of the Lord's Day, commonly called Sunday." II Ibid. 396. Section V thereof follows: "And be it further enacted by the authority aforesaid, That no public sports or pastimes, as bear-baiting, bull-baiting, foot-ball playing, horse-racing, enterludes or common plays, or other unlawful games, exercises, sports or pastimes whatsoever, shall be used on the Lord's Day by any person or persons whatsoever, and that every person or persons offending in any of the premises, shall forfeit for every offense the sum of five shillings current money."

Remarkably little change has been made in the statute, except the penalty, during the centuries which have intervened since its passage. The last legislative amendment was by act approved March 2, 1896, 22 Statutes at Large 220,

which expressly added hunting, shooting, chasing game and fishing. The form and words of it after the amendment of 1896 are exactly as they have been carried forward in subsequent codifications, the current being Sec. 1733 of the Code of 1942, next quoted, which governs here. (The recent special enactments hereinafter cited do not apply to the facts of this case except to show the legislative understanding of the law.)

"§ 1733. Public sports prohibited on the Lord's Day.— No public sports or pastimes, as bear-baiting, bull-baiting, football playing, horse-racing, interludes or common plays, or other games, exercises, sports or pastimes, such as hunting, shooting, chasing game, or fishing, shall be used on the Lord's Day by any person or persons whatsoever; and every person ·or persons offending in any of the premises shall, upon conviction, be deemed guilty of a misdemeanor, and be subject to a fine not to exceed fifty dollars, or imprisonment not to exceed thirty days."

Apparently most of the Sunday sports cases which have reached the courts of last resort of other jurisdictions have been prosecutions under statutes which prohibited work on the Sabbath. Our corresponding law is Section 1732 of the Code which is not involved in this case, was not considered by the lower Court and will not be here. The sharp cleavage in the decisions of the Courts of other States is illustrated by *State v. Nashville Baseball Association,* 1919, 141 Tenn. 456, 211 S. W. 357, 4 A. L. R. 368, and *Levering v. Williams,* 1919, 134 Md. 48, 106 A. 176, 4 A. L. R. 374, which are annotated at 4 A. L. R. 382. Supplemental annotations are found in 50 A. L. R. 1050 and 56 A. L. R. 813. While the cited cases are not directly here in point because work statutes were involved, as said above, they are nevertheless helpful because they turned upon the question of whether the relatively modern activities were within the intention of the lawmaking bodies, since the early statutes were enacted at a time when the activities, whether regarded as work or

sport, were unknown. The Tennessee case proceeded upon the theory that baseball as then played was wholly unknown to the framers of the law and was therefore not included within its terms. The better-reasoned foreign decisions appear to be those which reach the contrary result, which accords with the view of this Court expressed in *Palmetto Golf Club v. Robinson, supra,* 143 S. C. 347, 141 S. E. 610, and implied in *Greenville Baseball v. Bearden, supra,* 200 S. C. 363, 20 S. E. (2d) 813. Golf is not mentioned in our statute and was doubtless as unknown to its original framers as baseball to the lawmakers of Tennessee when their early statute was enacted. Fallacy in the reasoning employed by the Tennessee court is pointed out by the annotator at 4 A. L. R. 383, 384, who suggests that the conclusion that professional baseball was not included in the ban of Sunday work, because unknown at the time of the passage of the statute, would similarly exclude labor upon the manufacture of automobiles on Sunday because they were also unknown at the time of the inception of the law. That and similar cases are also the subject of comment by the Virginia court in *Crook v. Com.,* 147 Va. 593, 136 S. E. 565, 50 A. L. R 1043. Decisions of the courts of Michigan and Nebraska which hold that modern baseball is within the intendment of the sports ban of their old statutes, as quaintly worded as ours, are digested in 16 Ann. Cas. 406 and 21 L. R. A., N. S., 24. Conclusive upon us, moreover, is the fact that a majority of this Court in the Palmetto Golf case refused to follow reasoning and result similar to that of the Tennessee court, although strongly advocated by the Chief Justice in his dissenting opinion.

The construction of the statute which we follow accords with that of the legislature which is evidenced by the several recent enactments to legalize various specified Sunday sports and amusements in certain areas of the State. Acts No. 218 of 1941, 42 Stat. 306; No. 87 of 1943, 43 Stat. 127; No. 82 of 1947, 45 Stat. 107; No. 20 of 1949, 46 Stat. 20; and

No. 1044 of 1950, 46 Stat. 2526. They expressly authorize modern activities which may be properly categorized with automobile racing as public sports or pastimes and the special acts would have been unnecessary under the view of the lower Court in this case. The latter's interpretation of the law is rather an amendment of it which we think should be left to the lawmaking body. We quote the concluding words of the Delaware court in *Walsh v. State*, 3 W. W. Harr., Del., 514, 139 A. 257, 258, 56 A. L. R. 810, as follows: "If this statute as construed is a puritanical relic of ancient times, as is in substance argued * * * we have only to say that the remedy, if any is needed, should be sought before the Legislature and not before the courts whose sole duty is to expound what the law is and not determine what it should be."

Late decisions of the appellate courts of Georgia are of interest and persuasion. They hold that automobile races come within the phrase "athletic events, games and contests" of a 1949 permissory statute of that State. *Worley v. State*, 79 Ga. App. 594, 54 S. E. (2d) 439, 440; *Brown v. Akin*, 206 Ga. 153, 56 S. E. (2d) 277. *Id.*, 80 Ga. App. 712, 57 S. E. (2d) 242.

Because of the cited prior construction of the statute by this Court, which is not out of line with that of other courts with respect to similar statutes or with the view manifested by the subsequent course of legislation in this State, it is unnecessary to add more in reconciliation of it with the rules of strict construction of penal statutes and of *ejusdem generis,* urged in argument by respondents; both contentions were unsuccessfully made in the Palmetto Golf case. However such construction is supported by the following authoritie~ which we take from appellants' brief: 50 Am. Jur. 246 ~ seq., 408 et seq., Statutes, Secs. 250, 389; *Pickens v. Max-well Bros. & Quinn*, 176 S. C. 404, 180 S. E. 348; and *State v. Johnson*, 196 S. C. 497, 14 S. E. (2d) 24.

The judgment is reversed and the injunction dissolved.

FISHBURNE, TAYLOR and OXNER, JJ., and J. ROBERT MARTIN, JR., A.A.J., concur.