## 17678

CAROLINA AMUSEMENT CO., Drive-In Theatres of S. C., Inc., Greenville Enterprises, Inc., Spartanburg Theatres, Inc., Claude Rumley, H. P. McManus and Mrs. B. C. Williams, partners doing business as the Greer Drive-In Theater, Augusta Road Drive-In Theater Corp., Textile Amusement Co., Inc., Paris Theatre Co., Inc., Star Theatres, Inc., J. Mason Alexander, Wake Meyers, R. M. Caine, Calvin S. Teague and William H. Beattie, Individually for themselves and for other patrons of motion picture theatres similarly situated, Appellants, v. J. R. MARTIN, as Sheriff of Greenville County, S. C., B. B. Brockman, as Sheriff of Spartanburg County, S. C., and Daniel R. McLeod, as Attorney General of the State of South Carolina, Respondents.

(115 S. E. (2d) 273)

560

*Messrs. Sam R. Watt* and *Chester D. Ward, Jr.,* of Spartanburg, and *Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellants,*

*Daniel R. McLeod, Esq., Attorney General,* of Columbia, *for Respondents,*

July 7, 1960.

Stukes, Chief Justice.

This is an action for declaratory judgment (1) that Section 64-1 of the Code of Laws of South Carolina of 1952 is inapplicable to the orderly showing of motion pictures by theatres on Sunday, or (2) that the statute is invalid because in conflict with the First and Fourteenth Amendments to the Constitution of the United States and article 1, secs. 4 and 5 of the Constitution of South Carolina of 1895. The prayer of the complaint is for permanent injunction against the defendants from enforcing the statute against, or interfering with, the orderly showing of motion pictures on Sunday in the theatres of the plaintiff owners and operators thereof.

The cited statute follows:

"No public sports or pastimes, such as bear-baiting, bull-baiting, football playing, horse-racing, interludes or common plays, or other games, exercises, sports or pastimes, such as hunting, shooting, chasing game or fishing, shall be used on Sunday by any person whatsoever. Every person offending in any of the premises shall, upon conviction, be guilty of a misdemeanor and be subject to a fine not to exceed fifty dollars or imprisonment not to exceed thirty days."

The lower court held that the operation of public moving picture theatres is within the statute and is prohibited thereby on Sunday; and that the statute is not violative of any of the provisions of the Federal or State Constitutions. The plaintiffs have appealed.

Appellants' first point is that motion pictures are not within the terms of the statute, being unknown at the time of its enactment. We think, however, that they are embraced in the words of the statute, interludes or common plays. The word "plays" denotes theatrical performances and Webster defines an interlude as follows: "An entertainment of a light or farcical character introduced between the acts of the old mystery and morality plays or forming a feature of a festival, fete, etc.; hence, one of the farces or comedies to which these entertainments gave rise; also, formerly, any popular drama." So far as the purpose of the statute is concerned, we see no distinction between a theatrical performance on a stage and one projected on a screen.

Golf was probably unknown to the framers of the statute but it was considered as within it, and prohibited by it on Sunday if public or professional, in *Palmetto Golf Club v. Robinson,* 143 S. C. 347, 141 S. E. 610. Professional baseball, although unknown at the time of the passage of the Sunday law, was taken by court and counsel to be within the ban of it in *Greenville Baseball, Inc. v. Bearden,* 200 S. C. 363, 20 S. E. (2d) 813. Motion pictures were similarly so considered in *Greenville Enterprise, Inc. v. Jennings,* 210 S. C. 163, 41 S. E. (2d) 868. In the case just cited it appears that two of the plaintiffs there are two of the appellants here. They did not then contend for the construction of the law which they now assert. Rather, they agreed with our construction. Automobile racing was held to be within the ban of the statute, although unknown at the time of its enactment, in *Bishop v. Hanna,* 218 S. C. 474, 63 S. E. (2d) 308, 24 A. L. R. (2d) 808. The last cited case contains a history of the law which has been of force, largely unchanged, since the year 1712.

In apparent recognition of the obstacles to them of the decisions in the *Palmetto Golf Club case* and *Bishop v. Hanna,* both *supra,* appellants petititoned for, and were granted, leave to argue against them. However, upon careful consideration, the court adheres to them and will not reverse or modify them. The authority of them dictates affirmance of the judgment in the instant case.

As was pointed out in *Bishop v. Hanna, supra,* the legislature has consistently construed section 64-1 as prohibiting exhibition of motion pictures on Sunday. Sections 5-103 and 5-104 of the Code permit such on Sunday in certain localities, at fixed times and under specified conditions. Of course, this legislation would have been unnecessary if Sunday movies were not prohibited by Sec. 64-1. (So would the case of *Greenville Enterprise, Inc. v. Jennings, supra,* brought by two of the instant appellants, have been unnecessary if Sunday movies were not prohibited by section 64-1.)

Appellants cite the rule of strict construction of criminal statutes. Such contention is disposed of as was done in *Bishop v. Hanna, supra* [218 S. C. 474, 63 S. E. (2d) 310], in the following language: "Because of the cited prior construction of the statute by this Court, which is not out of line with that of other courts with respect to similar statutes or with the view manifested by the subsequent course of legislation in this State it is unnecessary to add more in reconciliation of it with the rules of strict construction of penal statutes and of *ejusdem generis,* urged in argument by respondents; both contentions were unsuccessfully made in the *Palmetto Golf case.* However, such construction is supported by the following authorities which we take from appellants' brief: 50 Am. Jur. 246 *et seq.,* 408 *et seq., Statutes,* Secs. 250, 389; *Pickens v. Maxwell Bros. & Quinn,* 176 S. C. 404, 180 S. E. 348; and *State v. Johnson,* 196 S. C. 497, 14 S. E. (2d) 24." As was said in the cited case of *State v. Johnson,* the proper construction of a penal statute is that which finds and puts into effect the intention

of the lawmaking body as gathered from a reasonable interpretation of the words of the statute.citing *State v. Firemen's Ins. Co.,* 164 S. C. 313, 162 S. E. 334.

There is cited by appellants *People v. Hemleb,* 127 App. Div. 356, 111 N. Y. S. 690, which held that a moving picture theatre is not included within the statute there under construction, which differs materially from ours. Moreover, the decision was not that of a court of last resort and seems not to have been followed in its own jurisdiction. See annotation, 24 A. L. R. (2d), at page 841. *Crawford v. City of Pascagoula,* 123 Miss. 131, 85 So. 181, 182, held that moving pictures come within a Sunday law which prohibited "interludes, farces, or plays of any kind." Of the same result are: *Ex parte Lingenfelter,* 64 Tex. Cr. R. 30, 142 S. W. 555, and *Zuccaro v. State,* 82 Tex. Cr. R. 1, 197 S. W. 982; the Texas statute, enacted before moving pictures existed, prohibited "circuses, theaters, variety theaters and such other amusements as are exhibited," etc.

"The exhibition of moving pictures has been held within the application of acts forbidding generally the giving on Sunday of theatrical representations or performances, the exhibition of 'plays of any kind,' the keeping open of places of public amusement, which are defined as 'circuses, theatres, variety theatres and such other amusements as are exhibited and for which an admission fee is charged.' " 83 C. J. S., Sunday, § 18b, p. 834.

There are cases in which moving picture theatres have been held to violate no-work-on Sunday statutes, which is not precisely the question presented here. An example is *Rosenbaum v. State,* 131 Ark. 251, 199 S. W. 388, L. R. A. 1918B, 1109. The opinion contains an interesting history of the secular and religious origins of the observation of a day of rest. The custom has not been the result only of the precepts of religion. It is said in the 1949 North Carolina case of *State v. Trantham,* 230 N. C. 641, 55 S. E. (2d) 198, that the validity of Sunday closing ordinances has been the

subject of discussion in at least 1,590 cases decided in the various jurisdictions of the United States.

Appellants argue that the legislative intent of section 64-1 was to prohibit only disorderly and noisy public sports or pastimes, such as some of them named are, but that could hardly apply to "interludes or common plays", within which we think that moving pictures come. Moreover, that thought has not been alluded to in our former decisions which have upheld the law. None of them depended upon the noise or disorder of the banned activity. "According to the present view, Sunday laws are based on the experience of mankind as to the wisdom and necessity, for both the physical and moral welfare of man, of having at stated intervals a day of rest from customary labor. Consequently, such laws have been uniformly recognized as a legitimate exercise of the police power. Since the purpose of Sunday statutes is to promote the physical and moral nature of man, the right to prohibit secular pursuits on Sunday is not affected by the fact that they may be noiseless and harmless in themselves." 50 Am. Jur. 808, sec. 9.

The lower court did not err in considering section 64-2 of the Code which forbids work on Sunday, except work of necessity or charity. Exactly the contrary of appellants' contention thereabout was held in the *Palmetto Golf Club case, supra.* (The code sections were then numbers 713 and 715.) They are parallel statutes and together (with the ensuing sections) contain the legislative will with respect to the day of rest. Indeed, they were originally parts of the same enactment; they have been separated by subsequent codifications. II Statutes of South Carolina (Cooper's Compilation) 396. The note of Dr. Cooper at page 707 is quoted below to show the grasp of the problem by that great scholar at that early date; it anticipates the constitutional question which will be next discussed:

"For all the laws of morality arise from and are founded upon the duties of man towards man in a state of society.

The affairs of the next world are matters of private belief, not of public cognizance; and the business of society can go on without reference to any religious creed whatever. This principle seems to have suggested the VIII Article of our Constitution, which enacts that 'the free exercise of religious profession and worship, without discrimination or preference, shall forever after be allowed in this State to all mankind.' Constitutional law is the paramount law of the land, and every legislative Act contravening it is *ipso facto* void. This does not interfere with the right of the legislature to incorporate religious societies for civil purposes, nor with the right of appointing a Sabbath or day of rest from labour, as a municipal institution, conducive to civil expedience."

Is the law under attack violative of the First Amendment of the Federal constitution and sec. 4, Art. 1, of the State constitution which in identical terms inhibit laws respecting an establishment of religion or prohibiting the free exercise thereof?

The law was held to be constitutional in *Palmetto Golf Club v. Robinson, supra,* 143 S. C. 347, 141 S. E. 610. In the earlier case of *Cain v. Daly,* 74 S. C. 480, 55 S. E. 110, 112, it was said with respect to the no-sale-on-Sunday statute, "The constitutionality of a Sunday law like this is so generally recognized that there is no need to cite authorities in support of the proposition." However, in view of appellants' earnest argument, the question will be discussed.

In *Hennington v. State of Georgia,* 163 U. S. 299, 16 S. Ct. 1086, 41 L. Ed. 166, the Supreme Court upheld a statute which forbade the running of a freight train on Sunday, although in interstate commerce, and quoted with approval the following from the opinion of the Georgia court by the famed Chief Justice Bleckley:

"With respect to the selection of the particular day in each week which has been set apart by our statute as the rest day of the people, religious views and feelings may have had a controlling influence. We doubt not that they did have, and

it is probable that the same views and feelings had a very powerful influence in dictating the policy of setting apart any day whatever as a day of enforced rest. But neither of these considerations is destructive of the police nature and character of the statute. If good and sufficient police reasons underlie it, and substantial police purposes are involved in its provisions, these reasons and purposes constitute its civil and legal justification, whether they were or not the direct and immediate motives which induced its passage, and have for so long a time kept it in force. Courts are not concerned with the mere beliefs and sentiments of legislators, or with the motives which influence them in enacting laws which are within legislative competency. That which is properly made a civil duty by statute is none the less so because it is also a real or supposed religious obligation; nor is the statute vitiated, or in anywise weakened, by the chance, or even by the certainty, that in passing it the legislative mind was swayed by the religious, rather than by the civil, aspect of the measure. Doubtless, it is a religious duty to pay debts, but no one supposes that this is any obstacle to its being exacted as a civil duty. With few exceptions, the same may be said of the whole catalogue of duties specified in the ten commandments. Those of them which are purely and exclusively religious in their nature cannot be, or be made civil duties, but all the rest of them may be, in so far as they involve conduct as distinguished from mere operations of mind or states of the affections. Opinions may differ, and they really do differ, as to whether abstaining from labor on Sunday is a religious duty; but whether it is or is not, it is certain that the legislature of Georgia has prescribed it as a civil duty. The statute can fairly and rationally be treated as a legitimate police regulation, and, thus treated, it is a valid law. There is a wide difference between keeping a day holy as a religious observance and merely forbearing to labor on that day in one's ordinary vocation or business pursuit." *Hennington v. State of Georgia,* 90 Ga. 396, 397-399, 17 S. E. 1009, 1010.

In the later case of *Petit v. State of Minnesota,* 177 U. S. 164, 20 S. Ct. 666, 44 L. Ed. 716, the conviction of the defendant of keeping open a barber shop on Sunday was affirmed, and the court said: "We have uniformly recognized state laws relating to the observance of Sunday as enacted in the legitimate exercise of the police power of the state. The subject was fully considered in *Hennington v. Georgia,* 163 U. S. 299, 16 S. Ct. 1086, 41 L. Ed. 166, and it is unnecessary to go over the ground again. It was there said: 'The legislature having, as will not be disputed, power to enact laws to promote the order and to secure the comfort, happiness, and health of the people, it was within its discretion to fix the day when all labor, within the limits of the state, works of necessity and charity excepted, should cease.' And these observations of Mr. Justice Field, then a member of the Supreme Court of California, in *Ex parte Newman,* 9 Cal. 502, whose opinion was approved in *Ex parte Andrews,* 18 Cal. 678, in reference to a statute of California relating to that day, were quoted: 'Its requirement is a cessation from labor. In its enactment, the legislature has given the sanction of law to a rule of conduct which the entire civilized world recognizes as essential to the physical and moral well-being of society. Upon no subject is there such a concurrence of opinion, among philosophers, moralists, and statesmen of all nations, as on the necessity of periodical cessation from labor. One day in seven is the rule, founded in experience, and sustained by science. * * * The prohibition of secular business on Sunday is advocated on the ground that by it the general welfare is advanced, labor protected, and the moral and physical well-being of society promoted.' Well-nigh innumerable decisions of the state courts have sustained the validity of such laws."

Of the same tenor is the following from the opinion in the earlier case of *Soon Hing v. Crowley,* 113 U. S. 703, 5 S. Ct. 730, 734, 28 L. Ed. 1145: "Laws setting aside Sunday as a day of rest are upheld, not from any right of the government to legislate for the promotion of religious ob-

servances, but from its right to protect all persons from the physical and moral debasement which comes from uninterrupted labor. Such laws have always been deemed beneficent and merciful laws, especially to the poor and dependent, to the laborers in our factories and workshops, and in the heated rooms in our cities; and their validity has been sustained by the highest courts of the states."

That the day of rest selected by the legislative bodies coincides with the Christian Sabbath is no reason to invalidate the laws, as is forcefully set forth in *State v. Ullner,* Ohio App., 143 N. E. (2d) 849, 851, affirmed 167 Ohio St. 521, 150 N. E. (2d) 413; appeal dismissed for want of substantial Federal question, 358 U. S. 131, 79 S. Ct. 230, 3 L. Ed. (2d) 225, as follows:

"But it is said that while requiring the observance of one day out of seven as a day of rest is a valid exercise of the police power, that power does not authorize the fixing of a specific day of the week as a day of rest, particularly when the specific day happens to be the day designated by the religion of the majority of the citizens as a day of rest, such as the Christian Sabbath. It is difficult—we think impossible —to make even a convincing argument that such a law has any relation whatsoever to religion, that is, anything to do with man's relation to his God. It requires nothing. It imposes nothing. It dictates nothing. It leaves him completely free to choose his religion and practice it without let or hindrance. If designating a specific week day as a day of rest is beyond the power of the legislature, it must be for some other reason. We do not think that the legislature is required to assign a reason for fixing a specific day, rather than leaving it to individual choice. We think valid reasons could be stated. In passing legislation, it is a proper object to consider the ease or difficulty of enforcement. Now, certainly the power to enforce the observance of a specific day of rest would be much easier than to enforce a day of rest selected by the individual. It would seem that the latter would not only be difficult, but, in fact impossible to enforce. And the

fact that a large group is already observing a specific day would be a proper thing to consider, and the selection of that day for that reason would not interfere with anyone's freedom of religion."

Appellants argue that some of the decisions which have been cited are presently inapplicable because they involved no-work-on Sunday statutes, not no-amusements, as here. But the applicable constitutional principles are the same, and it would hardly be contended that a moving picture theatre could be operated without the labor of machine operators, ticket sellers, ushers, etc.

*State v. McGee,* 237 N. C. 633, 75 S. E. (2d) 783, 790, involved the constitutionality of an ordinance of the City of Charlotte which banned the exhibition of moving pictures during certain hours on Sunday. The ordinance was attacked on the same constitutional grounds on which appellants attack our statute. All were overruled and with respect to the establishment of religious inhibitions the Court said: "In our opinion, the ordinance is not subject to attack on the ground assigned. There is nothing in it that offends the First Amendment of the Constitution of the United States, or that attempts to interfere with the natural and inalienable right of man to worship Almighty God according to the dictates of his own conscience, as vouchsafed to all citizens in Article I, Section 26, of our State Constitution. The ordinance contains no provision that may be construed as impinging upon the freedom of conscience. It neither purports to compel nor deny the observance of any religious duty. It so happens that the great majority of people desire to observe Sunday as the day of rest. And measures for its observance do not come from a desire to impose upon the conscience of any individual, but rather to promote the public health, the general welfare, safety and morals of the people and to give them an opportunity to rest from their secular activities. Long before civil governments undertook to exercise their police power to enforce the observance of Sunday as a means of promoting the public health, the general welfare, safety, and morals

of the people, Christians had chosen this day in commemoration of the Resurrection, in lieu of the Old Testament Sabbath which fell on Saturday. And the fact that an ordinance may require the cessation of secular pursuits on Sunday during the hours in which churchgoing people usually attend religious services, will not be held unconstitutional, if otherwise reasonable and valid."

*People v. Friedman,* 1950, 302 N. Y. 75, 96 N. E. (2d) 184, 186, appeal dismissed 341 U. S. 907, 71 S. Ct. 623, 95 L. Ed. 1345, upheld against constitutional attack a penal statute which forbade the sale of uncooked meat on Sunday. It was said by the court:

"Nor may we say that section 2147 of the Penal Law is unconstitutional because of infringement upon religious freedom. It is not a 'law respecting an establishment of religion, or prohibiting the free exercise thereof.' U. S. Const. 1st Amendment. It does not set up a church, make attendance upon religious worship compulsory, impose restrictions upon expression of religious belief, work a restriction upon the exercise of religion according to the dictates of one's conscience, provide compulsory support, by taxation or otherwise, of religious institutions, nor in any way enforce or prohibit religion. Although the so-called Sunday laws may be said to have had a religious origin, our statute since 1881, Penal Code, § 259, now Penal Law, § 2140, has also recognized that the first day of the week by general consent is set apart 'for rest', in accord with the general experience of mankind that it is wise and necessary to set apart such a day at stated intervals for both the physical and moral welfare of the members of a State or community. The power of the Legislature to regulate the observance of Sunday as a civil and political institution is well settled." (Citing authorities, some of which have been reviewed herein.)

In the jurisdictional statement filed in support of an unsuccessful appeal of the last cited case to the Supreme Court it was said: "The question * * * is an important one: Are

*Hennington v. Georgia* and *Petit v. Minnesota* still law in view of the [*Everson v. Board of Education of Ewing Tp.,* 330 U. S. 1, 67 S. Ct. 504, 91 L. Ed. 711; 330 U. S. 855, 67 S. Ct. 962, 91 L. Ed. 1297 and *People of State of Illinois ex rel. McCollum v. Board of Education,* 333 U. S. 203, 68 S. Ct. 461, 92 L. Ed. 649] decisions?" *Two Guys from Harrison-Allentown, Inc. v. McGinley,* D. C., 179 F. Supp. 944, at page 948. The Supreme Court said *per curiam:* "The motion to dismiss is granted and the appeal is dismissed for the want of a substantial federal question." 341 U. S. 907, 71 S. Ct. 623, 95 L. Ed. 1345.

Appellants here cited two recent decisions of the Supreme Court: *Everson v. Board of Education,* 330 U. S. 1, 67 S. Ct. 504, 91 L. Ed. 711, 168 A. L. R. 1392; and *People of State of Illinois ex rel. McCollum v. Board of Education,* 333 U. S. 203, 68 S. Ct. 461, 92 L. Ed. 649, 2 A. L. R. (2d) 1338, referred to in the preceding paragraph. The first held that a State may use tax-raised funds to pay the bus fares of parochial school pupils as a part of a general program under which it pays the fares of pupils attending public and other schools. The second cited case held that the First Amendment is violated by the religious instruction of public school children, during school hours, in tax-supported school buildings. Both cases applied the First Amendment to the Federal Constitution to State action perforce the Fourteenth Amendment, as to which there is no controversy in this case; neither was concerned with a Sunday law and they are, therefore, irrelevant here; nor is the reasoning of them applicable. In *Zorach v. Clauson,* 343 U. S. 306, 72 S. Ct. 679, 682, 96 L. Ed. 954, the Court differentiated the facts of it from the *McCollum case* and upheld religious instruction of volunteer public school pupils during "released time" in other than school buildings by private instructors. Again, the decision is not in point here, but the following from the leading opinion by Mr. Justice Douglas indicates the constitutionality of Sunday observance laws:

"We are a religious people whose institutions presuppose a Supreme Being. We guarantee the freedom to worship as one chooses. We make room for as wide a variety of beliefs and creeds as the spiritual needs of man deem necessary. We sponsor an attitude on the part of government that shows no partiality to any one group and that lets each flourish according to the zeal of its adherents and the appeal of its dogma. When the state encourages religious instruction or cooperates with religious authorities by adjusting the schedule of public events to sectarian needs, it follows the best of our traditions. For it then respects the religious nature of our people and accommodates the public service to their spiritual needs. To hold that it may not would be to find in the Constitution a requirement that the government show a callous indifference to religious groups. That would be preferring those who believe in no religion over those who do believe. Government may not finance religious groups nor undertake religious instruction nor blend secular and sectarian education nor use secular institutions to force one or some religion on any person. But we find no constitutional requirement which makes it necessary for government to be hostile to religion and to throw its weight against efforts to widen the effective scope of religious influence. The government must be neutral when it comes to competition between sects. It may not thrust any sect on any person. It may not make a religious observance compulsory. It may not coerce anyone to attend church, to observe a religious holiday, or to take religious instruction. But it can close its doors or suspend its operations as to those who want to repair to their religious sanctuary for worship or instruction."

Prohibiting the public exhibition of motion pictures on Sunday, is the law under attack in conflict with the due process and equal protection clauses of the Fourteenth Amendment of the Federal Constitution and Art. 1, Sec. 5, of the State Constitution?

This question is presented by appellants' exceptions XIII and XVIII, the former that the law arbitrarily selects one

form of recreation to prohibit and permits other types of a similar nature so far as rest and repose are concerned; and the latter that the law permits Sunday newspapers, periodicals, radio and television.

There is argument in the brief of appellants that ■■ equal protection is denied by reason of Code Secs. 5-103, 4, which permit Sunday moving pictures in certain areas of the State under specified conditions, referred to hereinabove. This question was not passed upon by the lower court, is not raised by any of the exceptions, and will not be considered on appeal. That aside, it cannot be gainsaid that the legislature may make reasonable classifications for the purpose of legislation. *Lindsley v. Natural Carbonic Gas Co.*, 220 U. S. 61, 31 S. Ct. 337, 340, 55 L. Ed. 369. With reference to equal protection the court said in the last cited case:

"The rules by which this contention must be tested, as is shown by repeated decisions of this court, are these: 1. The equal-protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

It was said with respect to equal protection in *People v. Friedman, supra*, in which the Supreme Court dismissed appeal per curiam, *supra*, as follows:

"Section 2147 may not be said to deny the equal protection guaranteed by the Fourteenth Amendment by reason of being discriminatory class legislation. The statutory scheme is that of a general prohibition against specified activities on Sunday with some exceptions as to necessities, recreation and conveniences, many of which exceptions merely emphasize that the Legislature recognizes Sunday as a day for rest, play, relaxation and recreation rather than merely as a religious Sabbath. The statutory scheme viewed as a whole is a valid one and does not constitute discrimination. * * * While the statute may not be perfectly symmetrical in its pattern of exclusions and inclusions, the equal protection of the laws does not require a Legislature to achieve 'abstract symmetry' *Patsone v. Commonwealth of Pennsylvania,* 232 U. S. 138, 144, 34 S. Ct. 281, 58 L. Ed. 539, or to classify with 'mathematical nicety' *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, 78, 31 S. Ct. 337, 55 L. Ed. 369; *Borden's Farm Products v. Baldwin,* 293 U. S. 194, 209, 55 S. Ct. 187, 79 L. Ed. 281."

And it was said in *Commonwealth of Pennsylvania v. Grochowiak,* 1957, 184 Pa. Super. 522, 136 A. (2d) 145, 148, a Sunday movie case, as follows:

"There is no merit in the contention that appellant has been denied due process and equal protection on the ground that the Act is discriminatory in its terms because it fails to include in its subject matter *all* worldly amusements on Sunday, subjecting them to a prohibition similar to that against the showing of moving pictures. *Bothwell v. York City,* 291 Pa. 363, 370, 140 A. 130. The appellant has relied on the principle of *Yick Wo v. Hopkins,* 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220. That decision was considered in *People v. Oreck,* 74 Cal. App. (2d) 215, 168 P. (2d) 186, 190, and the argument of a denial of equal protection of the laws was discarded in this language: 'Here the claimed discrimination is that those engaged in horse race betting are being prosecuted while those who run other types of illegal betting establishments are not. Such type of discrim-

ination, if discrimination it be, is not within the rule of the above cases. It is not a denial of equal protection that one guilty person is prosecuted while others equally guilty are not.' "

There are annotations which deal with the subject of constitutionality of discrimination by Sunday laws or ordinances as between different kinds of business and amusements in 46 A. L. R. 290, and 119 A. L. R. 752. In 46 A. L. R. at page 291 the editor states: "The general rule is that the classification on which a Sunday law is based is within the discretion of the legislative branch of the government, and will be upheld unless it is clearly arbitrary."

As usual in tests of constitutionality, in the absence of factual showing to the contrary, it will be presumed that the classification of a Sunday law is reasonable. *State v. Loomis*, 1925, 75 Mont. 88, 242 P. 344. And the burden is on one denying its validity to show that there is no admissible hypothesis on which it can be justified. *Ibid.*, 75 Mont. 88, 242 P. 344; 46 A. L. R. 291. The appellants have not carried the burden here. The law as written and construed by this and former decisions is quite broad and inclusive; it does not single out moving pictures, as said in the exceptions. See the copy of the statute, *supra*. Only the legality of that activity is now before us.

The same argument was made with respect to radio and television in *State v. McGee, supra,* 237 N. C. 633, 75 S. E. (2d) 783, 787, a Sunday movie case, and was rejected by the following language: "In our opinion, the operation of a motion picture theatre is an entirely different business from that of operating a readio or television station, and these operations may be placed in different classifications. Moreover, the ordinance forbids the operating, during certain hours, of any place of amusement, or the conducting of any show, game, or sport where a fee is charged for admission as a spectator, or a fee is charged to participate in any game, sport or amusement. No fee is required to be paid before one

can listen to his radio or watch a television show. There is no merit in the contention that the ordinance is discriminatory in this respect." The circulation of newspapers and periodicals cannot seriously be said to be comparable to the operation of a moving picture theatre.

Appellants' last question on appeal is, As construed, is the statute in conflict with the State and Federal constitutional guaranties of free speech?

For affirmative answer to their question appellants rely on *Burstyn, Inc. v. Wilson,* 343 U. S. 495, 72 S. Ct. 777, 96 L. Ed. 1098, and *Kingsley International Pictures Corp. v. Regents of Univ. of N. Y.,* 360 U. S. 684, 685, 79 S. Ct. 1362, 3 L. Ed. (2d) 1512. We do not agree.

The *Burstyn case* held that a state may not ban a film on the basis of its censor's conclusion that it is "sacrilegious." Requisite to that conclusion, it was held that motion pictures are within the constitutional protection of free speech and free press. Of course, it did not involve a Sunday law, and the Court expressly said, which is of significance here [343 U. S. 495, 72 S. Ct. 781]: "It does not follow that the Constitution requires absolute freedom to exhibit every motion picture of every kind at all times and all places." The *Kingsley case* again upset New York's censorship of a motion picture, Lady Chatterley's Lover, and reaffirmed that moving pictures are within the protection of the First and Fourteenth Amendments—free speech and free press.

Nowhere in our law which is under construction are the rights of free speech and free press impinged upon. The cessation of the commercial exhibition of moving pictures for one day of rest out of seven, in the exercise of the police power of the State, is not an invasion of appellants' constitutional rights of free speech and free press. Following appellants' argument, they might invade the room of a court in session and demand the right to exhibit a film in the name of these freedoms; or a church with worship in progress. Of course, they are subject to the reasonable regulations

of the police power, of which we think our Sunday sports and amusements law constitutes one.

This last question of appellants was raised in *Commonwealth of Pennsylvania v. Grochowiak, supra,* 1957, 184 Pa. Super. 522, 136 A. (2d) 145, 147, which sustained a conviction for violation of a statute that prohibited the exhibition of motion pictures on Sunday, except during certain hours. It was disposed of as we have indicated above, quoting from the opinion of the Court:

"Appellant, conceding the validity of Sunday legislation in general, contends that the 1935 Act is unconstitutional in that it infringes upon the right of free speech and of the press. The exhibition of motion pictures is 'within the ambit of protection which the First Amendment through the Fourteenth, secures to any form of "speech" or "the press" ' and expression by means of motion pictures is included within these constitutional guarantees. *Joseph Burstyn, Inc. v. Wilson,* 343 U. S. 495, 72 S. Ct. 777, 780, 96 L. Ed. 1098. But these rights of free speech are not absolute rights and a general and nondiscriminatory regulation of them in the public interest usually is not open to constitutional objection. As the Supreme Court said in the *Burstyn case*: 'It does not follow that the Constitution requires absolute freedom to exhibit every motion picture of every kind at all times and all places. That much is evident from the series of decisions of this Court with respect to other media of communication of ideas.' In *Kovacs v. Cooper,* 336 U. S. 77, 69 S. Ct. 448, 451, 93 L. Ed. 513, it is said: 'The police power of a state extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being and tranquility of a community. A state or city may prohibit acts or things reasonably thought to bring evil or harm to its people.' The proceedings in *Joseph Burstyn, Inc. v. Wilson, supra,* had to do with the content of motion pictures. That case involved the question of the constitutionality of a statute which provided for the censorship of motion pictures. The holding was 'that under the First and Four-

teenth Amendments a state may not ban a film on the basis of a censor's conclusion that it is "sacrilegious" '. The present appeal does not involve the question of the content or the subject matter of the motion pictures but only the occasion when they may be shown. The 1935 Act has nothing to do with what the pictures portray, the story they tell or the philosophy they stress; content is not within the purview of the Act. For this reason the authorities on which appellant relies have no application. In general a restriction on free speech which merely limits the rght as to time or place does not infringe upon the constitutional guarantees. And the 1935 Act in prohibiting the showing of motion pictures on but one day of the week without any limitation on their exhibition on the remaining six days is not unreasonable. The State in this case had the power to prohibit public amusements and exhibitions on Sunday."

*Crown Kosher Super Market of Mass., Inc. v. Gallagher*, D. C., 176 F. Supp. 466, and *Two Guys from Harrison-Allentown v. McGinley*, D. C., 179 F. Supp. 944, are discussed in the briefs. They are conflicting decisions of separate three-judge Federal courts. The Supreme Court has agreed to review both of them. 362 U. S. 960, 80 S. Ct. 876, 4 L. Ed. (2d) 875. We do not think that we should delay decision of the case at bar until action on those cases by the Supreme Court because, in the first place, it may well be not controlling of the issues here; and, in the second place, another three-judge Federal court awaits this decision. Heretofore some of the instant appellants instituted an action in the Federal Court seeking a judgment of invalidity of Code Sec. 64-1 as violative of the Federal constitution. A three-judge court was convened to hear the case. It, by order dated Sept. 8, 1959, abstained from exercising jurisdiction until such time as the court should have passed upon the constitutionality of the statute as applied to motion pictures. Under these circumstances we think that courtesy requires that we decide the case without delay.

In the *Crown Kosher case* by a divided three-judge Court, with a strong and persuasive dissent, the Massachusetts Sunday closing law was held invalid as applied to the complainants as violative of the First and Fourteenth Amendments. The plaintiffs were a corporation and some individuals who were officers, stockholders, or customers of the corporation, all of whom were Orthodox or Conservative Jews, and an Orthodox Jewish Rabbi. The corporation, its officers and employees violated the Massachusetts Sunday closing law by keeping the supermarket open on Sundays after 10 A. M. They closed on Saturday, the Jewish Sabbath, and on other Jewish holidays, but kept open not only on Sundays but on Christmas Day, the Fourth of July and other national and State holidays, inferably thereby profiting at the expense of their law-abiding competitors. The majority of the court sustained both prongs of the constitutional attack but laid more stress upon due process and equal protection. They held that the State law violated the First Amendment because of its religious origin and was not a day of rest statute although the Supreme Judicial Court of Massachusetts had held otherwise in *Commonwealth v. Chernock,* 336 Mass. 384, 145 N. E. (2d) 920. Chernock was a stockholder and manager of Crown Kosher and had been convicted in the State court for violation of the statute. The decision is contrary to the well-nigh unanimous rule that such statutes are regarded as day of rest statutes, despite their religious origin, as we hold in the instant case, in accord with the many authorities which have been cited and a multitude of others which could be cited. However, as said, the majority of the court seem to have attributed more importance to the violation of due process and equal protection which they found from the numerous exceptions and exemptions in the law which came from seventy-odd different amendments of it during the years. The law was described as an almost unbelievable hodgepodge, as prolix, irrational and whimsical. None of these adjectives can be applied with accuracy to our Sunday Law which is under construction.

With reference to the First Amendment, it seems to us that the court overlooked the fact that the plaintiffs in the case were representatives of a small minority and that the law imposed by the majority cannot be shaped or bent to accommodate their convenience or serve their financial ends. We think that the dissenting opinion, certainly with respect to the Frist Amendment, is in conformity with, and representative of, the great body of the law of this country upon the subject. We quote the following legal philosophy from it [176 F. Supp. 490] :

"The courts of the United States, the courts of the States, and those who help to frame our laws and who help to chart our way of life must make certain that the line is held within the law against any person who would make the law nothing more than an instrument for destroying religion in the name of democracy. I believe that this should be the credo of all people regardless of their religious beliefs. It must never be forgotten that ours is a government of laws predicated upon majority rule, and it must be remembered that when this day was set the States of the Union had each reserved to itself the right to enact statutes within the boundary lines of its constitution for the comfort, safety, and convenience of its people and the spirit of rest, comfort, and quietness of a Sunday in the lives of the people of Massachusetts, with the importance of having in mind other economic factors, and with the recognition of the value of the obligations and responsibilities of parents and the happy relationship of members of families associated with this day which not only has the aspects of rest, recreation and association, but also spiritual reflection. We cannot become prisoners of a false philosophy, which is truly dialectical materialism, and which in plain language represents the philosophy of Marx, Engel and Lenin, neither can we deny the right of others to disagree with our point of view. But is the person promoting this suit actuated by the spirit of the early founders of this great country, is he safeguarding the rights and privileges of our American society or is he

using this as a medium by which to destroy these spiritual and economic values, the inevitable result of which might well be the complete destruction of our way of life? And if this were to happen, of what value would be our Constitution and laws, and our democratic way of life."

The *Two Guys from Harrison-Allentown case* is of opposite result to that of the *Crown Kosher case,* again by a divided court but the dissenter appears not to have based his dissent upon the conclusion that the Pennsylvania Sunday closing statute there under review violated the First Amendment. The majority relied upon the authority of *People v. Friedman, supra,* and the action of the Supreme Court in dismissing the appeal for the want of a substantial Federal question, *supra,* 341 U. S. 907, 71 S. Ct. 623, 95 L. Ed. 1345, just as it was relied on in the dissenting opinion in the *Crown Kosher case.* The contrary result of the *Crown Kosher case* was noted but it was not followed in view of the Supreme Court precedent of the *Friedman case.* We quote from the opinion with respect to the latter:

"Thus, the Supreme Court in the *Friedman case* was faced with very substantial *indicia* of the statute's relation to religion, strikingly similar to those appellant urges upon us now. We can see no basis for reasoning that the Pennsylvania statute is unconstitutionally related to an establishment of religion without bringing the New York statute under the same interdiction. Yet, the Supreme Court sustained the New York statute summarily. If the view of the establishment of religion question thus authoritatively established by the Supreme Court is to be changed it is for that Court, not an inferior court, to do so. Our conclusion that the *Friedman case* has broad and controlling significance on the issue of establishment of religion is contrary to the view of the majority of the three-judge district court which recently decided *Crown Kosher Super Market of Mass. v. Gallagher, D. C. Mass.* 1959, 176 F. Supp. 466. That opinion disposes of this problem of controlling authority in a brief footnote which is not elaborate enough to make

the court's reasoning clear to us. It affords no useful critique of our own analysis which indicates that the Friedman precedent is controlling."

In summary: religious influence doubtless inspired the original enactment of our statute, which was more than two centuries ago; but for many decades it has been re-enacted in our decennial codes of laws, without any reference to religion. We sustain it, as have other courts theirs, as a reasonable exercise of the police power. It is part of the legislative plan for a day of rest and surcease from the usual activities, whether work or amusement, of the other days of the week; and we conclude that it does not offend any provision of the State or Federal constitutions. If revision or repeal is desirable in the public interest, that should be addressed to the legislature, not to the courts.

The exceptions are overruled and the judgment affirmed.

TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.